EMPLOYERS' CASUALTY COMPANY v. CITY OF WOLFE CITY ET AL.

No. 5165. Decided January 21, 1931.
(25 S. W., 2d Series, 320, 35 S. W., 2d Series, 694.)

*Lawther & Pope,* for Employer's Casualty Co., plaintiff in error.

A bank which loans money to a public contractor, which is used by him, in accordance with his agreement with the bank, to pay laborers on a public work contract, cannot recover against the surety on said bond either on the theory that it is a laborer or on the theory that it is subrogated to the rights of the laborer. Hess & Skinner Eng. Co. v. Turney (C. C. A.), 207 S. W., 171 'and (Sup. Ct.) in 216 S. W., 621; Int. Building & Loan Ass'n v. Fortassin (C. C. A.), 23 S. W., 496; First Nat. Bank v. Campbell (C. C. A.), 56 S. W., 628, Writ of Error refused by Supreme Court; Lion Bonding & Surety Co. v. Bank (C. C. A.), 194 S. W., 1012, Writ of Error refused by Supreme Court; U. S. Fidelity & Guaranty Co. v. Henderson County (C. C. A.), 253 S. W., 853, Writ of Error granted, but that part of decision was not disturbed; Southern Surety Co. v. Guaranty State Bank of De Leon (C. C. A.), 275 S. W., 436, Writ of Error d. f. w. j.; Morgan's L. and Texas Ry. Co. v. Texas Central Railway Co., 137 U. S., '171, 34 Law Ed., 625; Hardaway v. Nat. Sur. Co., 211 U. S., 552; United States v. Rundle, 107 Fed., 227; Cadenasso v. Antonelle, 59 Pac., 765.

*Jones & Jones,* for plaintiff in error, Bradshaw.

The trial court erred in refusing to submit to the jury defendant Bradshaw's special requested issue No. 1 which submitted to the jury the issue as to how many cubic yards of dirt Bradshaw had placed in the dam at the time he quit work.

*Clark, Harrell & Clark,* for defendant in error, First State Bank of Wolfe City. It was agreed and understood before the bank advanced the money that these assignments would be procured. It is true the claimants were not parties to this agreement, but Bradshaw was, and the assignments were procured from the claimants in pursuance of an agreement with him upon which the bank advanced the money. Moise v. Bird, 11 Mass., 436; 42 N. Y., 22, 1 Am. Rep. 487; 96 Am. St., 111; 13 C. J., 362. The laborers cannot assert any claim. They have parted with all rights, they have; and, under the facts of this case, the bank stands squarely

in the shoes of these men and is entitled to every right they originally possessed. This proposition is sustained by all of the decisions of this State so far as we have been able to find. Dillon v. Kaufman & Runge, 58 Texas, 696; Mannin v. Green, 121 S. W., 721; 25 R. C. L., 1374; Pridgen v. Warn, 79 Texas, 593, 595, 15 S. W., 559; Hicks v. Morris, 57 Texas, 658; Ellis ·v. Singletary, 45 Texas, 27; Clark v. Burke, 39 S. W., 308; Ford v. Ford, 22 Texas Civ. App., 453, 54 S. W., 773; Warhmund v. Merritt, 60 Texas, 24; Eyler v. Eyler, 60 Texas, 315; Savings Bank v. Paschall, 12 Texas, Civ. App., 613, 34 S. W., 1001; Park v. Kribs, 24 Texas Civ. App., 650, 60 S. W., 911; Loan Ass'n v. Everheart 18 Texas Civ. App., 192, 44 S. W., 888; Downard v. Loan Ass'n, 22 Texas Civ. App., 570, 55 S. W., 981.

MR. PRESIDING JUDGE SHORT delivered the opinion of the Commission of Appeals, Section B.

The municipality of Wolfe City brought this suit against T. A. Bradshaw, with whom it had a contract to build a public work, and his surety, Employers' Casualty Company, in which First State Bank of Wolfe City and also another, in the capacity of a materialman intervened, in the District Court of Hunt County. Upon a trial before a jury, judgment was rendered against Bradshaw and the Employers' Casualty Company, which judgment was, by the Court of Civil Appeals at Dallas, affirmed, where the nature and result of the case are more fully stated. 3 S. W., (2d) 527.

Both Bradshaw and the Employers' Casualty. Company were granted writs of error by the Supreme Court, and the case having been referred to Section A of the Commission of Appeals, an opinion was rendered by Judge Critz of that Section, in which it was recommended that the judgment of the Court of Civil Appeals and of the district court, awarding First State Bank of Wolfe City a recovery against the Employers' Casualty Company for $3,800.00, interest, and cost, be reversed, and that judgment be rendered for the Employers' Casualty Company, denying the bank any recovery against it; that the judgment of both courts, in favor of A. A. Humphrey (another intervener) for $95.55 be affirmed; and that in all other respects the judgment be reversed and the case remanded for a new trial, the costs of appeal being equally divided between the City and the bank, which recommendation was, by the Supreme Court, adopted and in which the Supreme Court also approved the holding of the Commission of Appeals on the question discussed. 25 S. W., (2d) 320.

However, upon motion for rehearing, on account of the fact that the Supreme Court had granted a writ of error in the case of Employers' Casualty Company v. County of Rockwall, involving one of the principal legal questions involved in this case, the judgment of the Commission of Appeals was set aside, and a rehearing granted, and the case has been re-argued before the Supreme Court. In the meantime the case of Employers' Casualty Company v. County of Rockwall having been referred to Section B of the Commission of Appeals it was there submitted, and an opinion has been written by Judge Leddy of that Commission, which has been adopted by the Supreme Court, discussing fully one of the questions involved in this case, and we refer to the opinion of that case for a full discussion of the law on that subject, to the effect that where a bank loans money to a public contractor which is used by him in accordance with his agreement with the bank to pay laborers on a public work contract, it cannot recover against the surety on said bond, on the theory that it is subrogated to the rights of the laborers. Hess & Skinner Engineering Company v. Turney, 110 Texas, 148, 216 S. W., 621.

The opinion of Judge Critz, we find, upon a re-examination of the case, to be in all respects correct and clearly decisive of all the material matters presented by the record. This opinion is re-adopted in connection with the opinion rendered in Employers' Casualty Company v. County of Rockwall, 35 S. W., (2d) 690. In the case last mentioned it is said:

"Rockwall County entered into a construction contract with Kirk & Patterson, a co-partnership, for the building of a stretch of concrete road for the performance of which contract Kirk & Patterson executed a bond in the sum of $35,000 with the Employers' Casualty Company as surety. The contractors defaulted in the performance of their contract and the work was taken over by the Surety Company. At the time of the execution of the bond and upon the taking over of the work by the Surety Company as well, the contractors made an assignment to the Surety Company of all of the deferred payments and retained percentages and any and all monies and properties due and payable to them at the time of any breach or default in the contract or cessation of work thereunder "or that may thereafter at any time become due and payable" to them on account of said contract.

"The Surety Company completed the contract to the satisfaction of the County, at which time there remained in the hands of Rockwall County, as part of the retained percentages due on the contract,

$3,861.85, to recover which sum the Surety Company instituted its suit. The Farmers' National Bank of Rockwall claimed the entire fund under an assignment from Kirk & Patterson made subsequent to the assignment to the Surety Company, and Paul Snow, the McDonald Hardware Company, and J. H. Smith, each claiming as a materialman by suit or intervention sought a recovery accordingly. The suits were consolidated and tried to a jury; an instructed verdict was returned in favor of Farmers' National Bank of Rockwall for the balance due on the contract in the hands of the County, less $500 attorneys' fees allowed to the County, in favor of the Snow Motor Company against the contractors and the Surety Company for the sum of $914.47, in favor of Rockwall County for $500 attorneys' fees, in favor of McDonald Hardware Company against the contractors in the sum of $1,134.09, and against the Surety Company for the sum of $25.00, and in favor of the Surety Company against the contractors in the sum of $6,175.20. On appeal, the Court of Civil Appeals affirmed the judgment in favor of the bank and Snow, but reversed the same as to the Hardware Company and Smith, and as to the county's recovery of attorneys' fees and remanded the cause. 300 S. W., 148.

"The bond executed by the Surety Company acknowledges liability 'to all persons who may perform labor or furnish material on such contract and agreement, or in any manner incident to the performance thereof; and to 'pay all subcontractors, workmen, laborers, mechanics and furnishers of material in full for all work done, labor performed and material furnished on the performance of said contract and agreement or in any manner incident to the performance thereof.'

"The Farmers' National Bank insists it was entitled to a judgment against the Surety Company upon the theory that it stood in the position of a laborer and furnisher of material within the terms of the bond because it loaned the contractors money on their note with the agreement and understanding that the proceeds of such loan would be used by the contractors to discharge bills for labor and material incurred in the performance of the contract. There is no pretense that at the time the bank made the loan to the contractors there was any assignment, or agreement for assignment, to the bank by laborers and materialmen whose bills were to be paid out of said funds, the only assignment claimed by the bank being the one executed by the contractors."

Section B of the Commission of Appeals in that case, after discussing at length the identical question of the rights of the Bank to be subrogated to the rights of the laborers, under almost the same situation presented by the facts in this case, holds that no such subrogation exists, citing in addition to Hess & Skinner Engineering Company v. Turney, supra, O'Neil Engineering Co. v. First National Bank (Com. App.) 222 S. W., 1091; Southern Surety Company v. Klein, 278 S. W., 527; Prairie State National Bank v. U. S., 164 U. S., 227, 41 Law Ed., 412; Columbia Digger Co. v. Rector, 215 Fed. 621; Maryland Casualty Co. v. Wash. National Bank, 92 Wash., 497, 159 Pac. 689.

In view of the full discussion of this question, in the Employers' Casualty Company v. County of Rockwall, and in view of the fact that it is the only serious question presented by the record, not fully discussed in the opinion of Judge Critz, we deem further discussion unnecessary.

Judgments of the district court and the Court of Civil Appeals for A. A. Humphrey are affirmed. Judgments of the district court and the Court of Civil Appeals for the First State Bank of Wolfe City, Texas, against Employers' Casualty Company for $3,800, interest and cost are reversed, and judgment rendered denying the bank a recovery from the Casualty Company. In all other respects the cause is remanded for new trial and costs of appeal are taxed against the City and the Bank, each being adjudged to pay one-half.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

The City of Wolfe City brought this suit in the district court of Hunt County, Texas, against T. A. Bradshaw and Employers' Casualty Company, a corporation. The following circumstances formed the basis of the litigation between the city and Bradshaw.

Bradshaw entered into a contract with the city to build a waterworks dam for it according to certain plans and specifications prepared by the City's engineer. The contract provided for a bond in the sum of $5000. The Employers' Casualty Company furnished the bond. Bradshaw failed to complete the work so undertaken by him and the city took charge and proceeded therewith until it had

expended the sum of $2152.60, but left same still incomplete because it had exhausted all available funds that the city could use for the purpose. The evidence shows and the jury found that it would have cost $3000 for the city to finish the dam according to the contract.

The First State Bank of Wolfe City intervened in the suit seeking to recover from Bradshaw and the Indemnity Company about $3800 alleged by the bank to have been paid out by it in settlement of claims of laborers and materialmen against Bradshaw.

Also A. A. Humphrey intervened on a claim for work performed by him. Also others not necessary to mention here intervened.

The city prayed for a judgment against Bradshaw and the Surety Company for $1222.80.

Trial in the district court before a jury resulted in a verdict on special issues and judgment thereon as follows:

(a) Judgment for the city against Bradshaw and the Casualty Company for $2842.75 with interest and costs.

(b) Judgment for the First State Bank of Wolfe City against Bradshaw and the Casualty Company for $3800 with interest at six per cent and costs.

(c) Judgment for A. A. Humphrey for $95.55 against Bradshaw and the Casualty Company with interest and costs.

(d) The judgment then contained the following provision:

"And it appearing to the Court, that there is on deposit with the intervener, First State Bank of Wolfe City, Texas, a sum of $3800.00 belonging to the City of Wolfe City, constituting a portion of the funds derived from a bond issue for the purpose of construction of the work in question and that had the work been completed in accordance with said contract and said alterations thereof, the defendant, Bradshaw, would have been entitled to have the same applied to the payment of the several claims for labor established by the intervener bank in this cause.

"The Court is of the opinion, that under the judgment in this case, the defendants are entitled to have the same applied now, as though the work had been completed by said Bradshaw.

"It is therefore, further ordered, adjudged and decreed by the Court, that the sum of money so on deposit in said bank, be applied towards the discharge of the judgment herein rendered as follows: $2842.75 shall be applied in discharge of the judgment herein rendered in favor of the City of Wolfe City and the balance thereof shall be applied to the payment and discharge, so far as it will go,

of the judgment rendered in favor of the said First State Bank of Wolfe City, Texas."

The surety company and Bradshaw both appealed to the Court of Civil Appeals for the 5th district at Dallas, which court affirmed the judgment of the district court. 3 S. W., (2d) 527. Bradshaw and the Casualty Company both applied for writs of error to the Supreme Court, and both applications were granted.

We shall first proceed to dispose of the case as between the Casualty Company and the First State Bank.

It is the contention of the Casualty Company that the bond furnished by it does not cover or embrace the claims for $3800 herein sued for by the bank, and this contention is presented to this court by proper assignments.

The bank's claim is based on the following transactions:

After the contract between the city and Bradshaw had been entered into, and after the bond had been furnished and accepted by the city, and after the work had progressed to a considerable extent, up to which time the bank had no connection or interest whatever in the matter, it is shown that Bradshaw needed money with which to pay claims of laborers and materialmen who had worked on, and furnished material for the project; that the laborers had quit work, and both the laborers and materialmen were demanding their money; that Bradshaw applied to the bank for money with which to pay the above claims; that the bank was willing to advance the money, but desired to be protected in the premises; that the bank's attorney advised that if Bradshaw would give an order on the city for the amount of the claims, and agree that the bank should take the place, and stand in the shoes of those holding the above mentioned claims, it, the bank, could, with safety, advance the money, but said attorney advised as further precaution that the bank take from each laborer and materialman an assignment of his claim and lien. It seems that these arrangements were agreed upon at a meeting between the city authorities, Bradshaw, and those representing the bank. The Indemnity Company had nothing to do with the transaction and was not consulted in regard to the same. Also the laborers and materialmen were not consulted, and did not agree to anything with reference to the matter at this time.

After the above transaction and agreements, the bank, from time to time, advanced the money to Bradshaw to pay the laborers and materialmen owed by him, and at the same time took Brad-

shaw's notes for the amounts thus advanced. The president of the bank testified as follows with reference to the taking of these notes:

"When I put this money to Bradshaw's credit in the bank he gave me notes for it, I still have those notes. I did not say to Mr. Bradshaw, after the men had all gotten their money and probably after the City had refused to accept the orders given by Bradshaw, that he did not owe me a cent, that I was looking to the City for payment of this money, I did not make that statement, I told him that he, the Bonding Company or the City owed me the money.

"When I paid out these amounts to the laborers and materialmen, I had to handle the matter in a way that would meet the requirements of the banking law and the bank examiners, and it had to be done by taking notes from him, it could not be handled as an overdraft. I put the notes in the assets of the bank and in order to make it balance, I deposited the money to Bradshaw's credit. If I had not done that and had honored his checks, the result would have been an overdraft and that is against the banking laws of the State."

When the money was thus advanced to Bradshaw it was passed to his credit on the books of the bank. Bradshaw then issued checks upon the bank to the laborers and materialmen in full payment and satisfaction of their claims against him. All of these checks had written upon their face words to show that they were in payment of labor or material used upon the city dam. These checks were delivered by Bradshaw to the laborers and materialmen, and were all cashed by the bank. Some of the checks were cashed directly at the bank by the persons to whom they were payable, and some of them were cashed at the stores, and then cashed by the bank. After all these checks had been cashed by the bank, the bank sent its agents to the various laborers and materialmen and procured from them written assignments of their respective original claims and liens, such assignments being dated back to the time the check to such party was cashed. The laborers and materialmen who received the checks were not parties to the original agreement and transactions between Bradshaw and the bank, and so far as this record shows, had no knowledge thereof. Neither did the casualty company have any connection with this agreement or knowledge thereof. Also it is conclusively shown that there was no understanding between the bank and the parties receiving Bradshaw's checks, at the time they received and cashed the same or before, but such parties re-

ceived such checks in full payment and satisfaction of their claims against Bradshaw. Furthermore, it is conclusively shown that no consideration was paid to such parties when the assignments to the bank above mentioned were procured.

Under the above facts the Court of Civil Appeals holds the bank subrogated to the rights of the laborers and materialmen and protected by the bonds. This holding is error.

As we understand the contentions of the bank, it here recognizes that the assignments from the persons receiving the checks did not operate to give it a claim against the Casualty Company on the bond; but, whether such is recognized by the bank or not, we so hold. We understand in this connection that the bank contends that the agreement between the debtor, Bradshaw, and itself, together with the other circumstances, is sufficient to work subrogation of the creditors' security in favor of the bank. We cannot sustain this contention. It is true that subrogation may accrue on an agreement between a volunteer and a debtor as held in Fievl v. Zuber, 67 Texas, 275, 3 S. W., 273, and other authorities cited by the Court of Civil Appeals. However, these authorities do not have application here for the reason that Bradshaw had no authority to deal with the bond, which is the property on which the lien was sought to be fixed by the transactions and agreement between him and the bank. In the case at bar, neither Bradshaw, the City, nor the bank had any authority to deal for the Casualty Company. At the time the bank advanced the money it took no assignment of the lien of laborers or materialmen, and it, the bank, had no claims against the bond that it was necessary for it to protect by paying the laborers and materialmen. Such being the case it was a pure volunteer, and is not entitled to any judgment against the bonding company. Certainly the bank could not be subrogated to any rights of the laborers or materialmen against the bond by virtue of its agreement with Bradshaw, for the reason that Bradshaw had no authority to deal with the bond. There is no equitable subrogation in favor of the bank against the bond, because such cannot exist when payment is made without legal obligation, and without being required for the preservation of some right of property in the party paying. Oury v. Saunders, 77 Texas, 278, 13 S. W., 1030.

We now come to consider the case with reference to the City and Bradshaw.

Bradshaw's pleading and proof is to the effect that the number of yards of dirt put in the dam by him is much larger than the

number indicated by the City's pleading and proof. The issue this made was not in anywise submitted to the jury. Bradshaw seasonably requested submission of an issue in these words:

"How many cubic yards of dirt had the defendant, T. A. Bradshaw, placed in the dam before he quit the job?"

This requested issue was refused by the judge. The state of the case was such as to prevent this issue thus requested from having relation to mere evidence, and refusal to this submission was prejudicial error.

It is contended that the judgment of the city against Bradshaw is greater than prayed for by the city. We pretermit any discussion of this matter, as it will not probably arise on another trial.

We recommend,

(a) That the judgments of the Court of Civil Appeals and the district court awarding the First State Bank of Wolfe City, Texas, a judgment against the Employers' Casualty Company for $3,800. interest and costs be reversed and here rendered for the Casualty Company, denying the bank any recovery against the Casualty Company;

(b) That the judgments of both said lower courts in favor of A. A. Humphrey for $95.55 be affirmed;

(c) That in all other respects the cause be reversed and remanded for a new trial; and

(d) That the City and the bank each pay one half the costs of appeal.

Judgments of the District Court and Court of Civil Appeals for Humphrey affirmed. Judgments of the District Court and Court of Civil Appeals for Bank against Employers' Casualty Co. for $3800, interest and costs, reversed and judgment rendered denying the Bank a recovery from the Casualty Co. In all other respects cause remanded for new trial, and costs taxed as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.

*C. M. Cureton,* Chief Justice.