## C. H. VERSCHOYLE ET AL V. R. B. HOLIFIELD ET AL.

No. 7085. Decided January 25, 1939.
Rehearing overruled March 8, 1939.
(123 S. W., 2d Series, 878.)

518

*Greenwood, Moody & Robertson,* of Austin, for plaintiff in error.

It was error for the court to hold that Verschoyle and Bates were not entitled to subrogation to the rights, liens, and the right to fix liens of the said parties who were paid with the said money advanced by them and in rendering judgment denying said Verschoyle and Bates and the Standard Accident Insurance Company as signee, of Verschoyle, any right to participate in the distribution of said fund. Galbraith Fox Lumber Co. v. Long, 5 S. W. (2d) 162; Faires v. Cockerell, 88 Texas 428, 31 S. W. 190, 639; Texas Land Co. v. Blalock, 76 Texas 85, 13 S. W. 12.

It was error for the court to render judgment in favor of a claimant against another when there are no pleadings filed by the said claimant asking for a personal judgment or that would support one. Security Banking & Investment Co. v. Flanagan, 241 S. W. 702; Henry v. Phillips, 151 S. W. 533; McBeath v. Campbell, 12 S. W. (2d) 118.

*Burgess, Chrestman & Brundridge, O. A. Fountain, Herbert W. Whisenant, Sullivan & Wilson, Jack F. Hyman,* all of Dallas, *E. W. Bounds,* of Fort Worth, *Levy & Levy* and *M. L. Cook,* all of Galveston, *Dibrell, Campbell & Mosheim,* of Seguin, *Witt, Terrell & Witt, of Waco, F. W. Heison,* of Houston, *Thos. R. Smith,* of Colorado City, *E. E. Murphy,* of San Angelo, *Powell, Wirtz, Rauhut & Gideon, Cofer & Cofer, Jas. R. Boyd, Cocke & Marberry* and *Lloyd Davidson,* all of Austin, and *Wm. McCraw,* Attorney General, and *Leonard King,* Assistant Attorney General, all for defendants in error.

The record discloses pleadings sufficient to warrant the relief sought by the claimant John W. Goodrum, or others similarly situated. Lee v. Boutwell, 44 Texas 151; White v. Texas Motor Car & Supply Co., 228 S. W. 138; Sullivan v. Doyle, 194 S. W. 136.

It was not error for the trial court to hold that Verschoyle and Bates were not entitled to be subrogated to the rights to fix liens of third party laborers and materialmen who were paid with money advanced by them and in rendering judgment denying them and the insurance company as assignee of Verschoyle any right to participate in the fund retained and paid into the registry of the court by the Highway Department, as they did not stand in the position of surety for the subcontractor or anyone else, nor did they have a claim against said fund that it was necessary for them to protect by paying said laborers and materialmen. Being mere volunteers equitable subrogation could not be decreed in their favor. Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co., 68 S. W. (2d) 551; Employers Casualty Co. v. Wolfe City, 119 Texas 552, 35 S. W. (2d) 694; Oury v. Saunders, 77 Texas 278, 13 S. W. 1030.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The case originated as a suit by Gulf Refining Company, for itself and in behalf of other creditors of R. B. Holifield, against Holifield, Dozier Construction Company, its receiver, its surety and the State Highway Commission, the purpose of the suit being to recover judgment for debts due for labor, material, etc., furnished to Holifield as subcontractor in the construction of a public highway in Sterling County under contract between the State and Dozier Construction Company, and to fix liens upon and obtain distribution of a fund amounting to $18,731.10 retained by the State Highway Commission, being the balance due by the State under the contract. Many persons and corporations were made parties by intervention and by cross actions.

The case was tried without a jury, resulting in the rendition of judgment against Holifield in favor of a number of the claimants for various amounts due them for labor, material, etc., and awarding to such claimants the right to participate ratably in the division of the said fund retained by the State Highway Commission which had been paid into the registry of the court. A number of the parties, including plaintiffs in error Verschoyle, Bates and Standard Accident Insurance Company, were denied participation in the fund, the court holding that they had no claim or lien against it. Personal judgment was rendered against Verschoyle in favor of several of the parties, and judgment was rendered in favor of Bates and Standard Accident Insurance Company against certain of the

parties on causes of action asserted by Verschoyle and Bates, Verschoyle having assigned his cause of action to Standard Accident Insurance Company before the conclusion of the trial. The trial court made elaborate findings of fact. There is no statement of facts. On appeal by Verschoyle, Bates and Standard Accident Insurance Company, the judgment of the district court was affirmed by the Court of Civil Appeals. 90 S. W. (2d) 907.

The first assignment of error presents the contention that Verschoyle and Bates, by reason of having advanced money to Holifield which was used in making payment for labor and materials in the completion of the construction of the highway, and on account of an agreement with Holifield, were entitled to be subrogated to the rights of those to whom the money so advanced by them was paid by Holifield, and in particular to a lien or to the right to fix a lien, under the provisions of Chapter 17, Acts Regular Session 39th Legislature (Articles 5472a-5472b, Vernon's Annotated Texas Statutes), on the fund retained by the State Highway Commission.

The following are the facts, as found by the trial court, on which the claim to the right of subrogation is based:

After the contract for the construction of the highway was made between the State and Dozier Construction Company as contractor and the usual contractor's bond executed and delivered, said company sublet the contract to Holifield, with the agreement that Holifield should assume and perform all the obligations of the original contractor, that all money to be paid by the State Highway Department under the contract should be paid to Dozier Construction Company, and that said company should retain nine per cent thereof and pay the balance to Holifield. To secure the performance of his agreement with Dozier Construction Company Holifield executed and delivered his bond in the sum of $103,461.12 payable to that company, which bond was signed by Public Indemnity Company as surety acting through plaintiff in error Bates as its attorney in fact. Bates was an employee of plaintiff in error Verschoyle, who was the state agent for Public Indemnity Company and approved and authorized the execution of the bond. While Verschoyle's agency contract required him promptly to report the execution of such bonds and to remit the premiums thereon, he neither reported the bond nor remitted the premium to the company until about seven months after the execution of the bond.

After entering upon the performance of the contract and

long before its completion, Holifield became financially embarrassed, and in May, 1932, substantially all of the work ceased, labor payroll and many bills for material being past due and unpaid, so that Holifield was unable further to prosecute the work on his own resources or credit. Verschoyle had a personal interest of ten per cent commission in the underwriting profits of Public Indemnity Company on its Texas business under his contract, and at the time of Holifield's cessation of work a substantial profit had been earned by the company on its Texas business. That profit was in danger of being reduced or possibly extinguished if the company sustained a material loss on Holifield's bond which Verschoyle had caused to be executed in the name of the company. When Verschoyle learned of the cessation of the work and of Holifield's financial distress, he feared that by reason of his failure to report the execution of the bond promptly he might be held personally liable for such loss as Public Indemnity Company might sustain by reason of Holifield's default.

On June 11, 1932, Verschoyle, together with Youngblood and Brisson, two of Holifield's creditors, made a written contract with Holifield in which it was agreed that they would advance to him $15,000.00 to be used in the completion of the road and that to secure repayment of said money so advanced Holifield would assign to Youngblood and Bates all proceeds due or to become due Holifield from Dozier Construction Company, which money received by Youngblood and Bates, after payment of payrolls due at the time, should be distributed to Verschoyle, Youngblood and Brisson until $10,000.00 should be paid to Verschoyle and $5,000.00 jointly to Youngblood and Brisson. At the same time Holifield by written instrument transferred and assigned to Youngblood and Bates all the proceeds then due or which might thereafter become due to him from Dozier Construction Company on the contract. When Verschoyle presented the assignment to Holland Page, president of the Dozier Construction Company, for acceptance by said company, he declined to accept it unless Verschoyle, Youngblood and Brisson would agree to pay "past due bills for labor and material and all such bills to completion of the job." Verschoyle made such promise and the assignment was accepted by Dozier Construction Company.

Pursuant to the foregoing arrangement Youngblood and Brisson and Verschoyle and Bates advanced money in various amounts which were used in payment for labor and material in the construction of the road. Part of the total amount so advanced by Verschoyle and Bates was repaid to them, with

the result that Verschoyle and Bates advanced an aggregate net amount of $12,586.57 never refunded to them. Of this amount $1,800.00 was advanced by Bates and $10,786.57 by Verschoyle.

On July 5, 1932, after part of the advancements had been made by Verschoyle and Bates, Youngblood and Brisson refused to make any further payments. Whereupon Verschoyle and Bates agreed with Holifield, who was unable to secure money elsewhere, that they would advance to him additional money to finish the work, upon Holifield's agreement that the assignment theretofore made should secure such further money and that they "should be subrogated to all of the rights of all parties to whom was paid any money thereafter so furnished by Verschoyle and Bates or either of them and that Verschoyle and Bates should stand in the shoes of such parties so paid with regard to any lien or right to fix a lien to secure payment of such sums." Pursuant to this agreement Verschoyle and Bates made additional advancements, being all or the greater part of the total net sum of $12,586.57 advanced by them and never repaid to them. No creditor of Holifield who was paid by funds advanced by Verschoyle and Bates made agreement to assign to Verschoyle and Bates any lien or right to establish a lien or that Verschoyle and Bates should be subrogated to any such right or lien.

The first contention made by plaintiffs in error is that, under the facts as found by the trial court, plaintiff in error Verschoyle, even in the absence of an agreement for subrogation, was not a volunteer in making advancements which were used to pay for labor and material in the construction of the road, and was by reason of making the advancements in such circumstances subrogated, in accordance with the general principles of equitable subrogation, to the liens or rights to liens possessed by those to whom any part of the money advanced by him was paid.

The lien to which the right of subrogation is asserted is that given by Articles 5472a and 5472b of Vernon's Annotated Texas Statutes, which provide that any person or corporation, furnishing material, labor, etc., to any contractor for public improvements, shall have a lien on the moneys or bonds or warrants due to the contractor for such improvements; that the claimant may fix a lien by giving notice of his claim in writing to the official whose duty it is to pay the contractor; and that such official, after receipt of such notice, shall retain enough of the moneys, bonds or warrants to pay the claim

in case it is established by judgment. The fund involved in the instant case, money retained by the State Highway Commission, being the balance due by the State to Dozier Construction Company for the construction of the highway, comes within the provisions of this statute.

■ We find no basis in the facts for any other conclusion than that Verschoyle, in making the payments for labor and material that should have been made by Holifield, was a mere volunteer, to whom the equitable right of subrogation is not accorded. A volunteer, as the term is used in this connection, is thus defined in Ruling Case Law.

"A stranger or *volunteer*, as those terms are used with reference to the subject of subrogation, *is one who, in no event resulting from the existing state of affairs, can become liable for the debt, and whose property is not charged with the payment thereof and cannot be sold therefor.* He is not necessarily one who has had nothing to do with the transaction out of which the debt grew. *Anyone being under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer. A person who is under no obligation whatever to pay the debt of another secured by a mortgage, and who has no interest in or relation to the property, is a volunteer,* within the meaning of the rule." (Our italics) 25 R. C. L. p. 1325, Sec. 11.

In the state of affairs existing at the time when Verschoyle came to Holifield's aid, Verschoyle was liable neither primarily nor secondarily to the laborers and materialmen who later were paid with the funds advanced by him. He was not a party to the original contract for the construction of the road, nor was he a party to the subcontract. He was not surety on either of the two bonds. He was merely an agent for the surety company that executed the bond given by the subcontractor to the original contractor. No property of Verschoyle was charged or chargeable with the payment of the debts to laborers and materialmen. These were Holifield's obligations. Verschoyle had no interest in the fund retained by the State Highway Commission and no relation to it. That fund was retained for the benefit of laborers and materialmen. They were the persons directly interested in it. If they had all been satisfied, the retained fund would have been paid by the State Highway Commission to the original contractor. It is apparent from these facts that Verschoyle in agreeing to make the advancements to Holifield and in making them was a volunteer within the definition above quoted.

· The contention is made, however, that Verschoyle was not a volunteer because he had certain personal interests in preventing a default on the part of Holifield in the performance of the contract. One of such personal interest was Verschoyle's fear that, in the event of default by Holifield, Public Indemnity Company might, because of Verschoyle's delay in reporting the execution of the bond to that company seek to hold him, Verschoyle, liable for any loss that it might suffer on account of such default. The other personal interest was that default by Holifield and loss on the bond would impair Public Indemnity Company's profits on its Texas business and thus decrease the amount of Verschoyle's commissions on the earnings of that company in Texas during the year. Neither of these personal interests had any close relation to the construction contract or to the debts for labor and material or to the retained fund on which the right to the lien is asserted. The first personal interest was merely a fear on the part of Verschoyle that a liability might be asserted against him. The other represented a loss that he might suffer in the total amount of commissions to be earned during the year. Neither of these gave rise to an obligation on the part of Verschoyle to make payments for labor or material° and neither of them placed him actually under compulsion to make such payments for the preservation of rights or property of his own. Such being the nature of the personal interests that caused Verschoyle to make the advancements, he was a mere volunteer. Aetna Life Insurance Co. v. Town of Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Prairie State National Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412.

The right of subrogation is also asserted by plaintiffs in error under the agreement made by Holifield with Verschoyle and Bates that they should be subrogated to the rights of laborers and materialmen to whom the money advanced was paid and should stand in their shoes so far as any lien or right to fix a lien was concerned. Plaintiffs in error rely upon Fievel v. Zuber, 67 Texas 275, 3 S. W. 273, and other decisions announcing the rule that an agreement for subrogation will be enforced whether made with the creditor or with the debtor. Holifield, who made the agreement with Verschoyle and Bates, was the debtor. The trial court expressly found that no creditor of Holifield who was paid by funds advanced by Verschoyle and Bates, made any agreement to assign to Verschoyle and Bates any lien or right to establish a lien or that Verschoyle and Bates should be subrogated to any such right or lien.

■ The important distinction between the instant case and the

cases relied upon by plaintiffs in error (Fievel v. Zuber, 67 Texas 275, 3 S. W. 273, Manning v. Green, 121 S. W. 721, and First State Bank v. Farmers & Merchants National Bank, 262 S. W. 225) is that here plaintiffs in error seek to obtain by agreement with the debtor a lien upon a fund which, as against the rights of laborers and materialmen, the debtor does not own and cannot control, whereas the agreements for subrogation sustained in those cases were made by debtors who owned or had an interest in the property against which the lien was fixed, that is, they were persons who had the authority to deal with the property and create liens against it. It is said by Justice Gaines, writing the opinion in Fievel v. Zuber, supra, that an agreement between the creditor and a stranger paying the debt that the stranger shall be subrogated to the lien is a virtual assignment of the lien. Similarly, as suggested in the same opinion, when the owner of encumbered property agrees with a stranger paying the debt that the latter shall be subrogated to the creditor's lien, there is in effect an agreement under which the debtor puts in place of the creditor one who pays for him and nobody receives any prejudice thereby. Equity regards as done that which the debtor had the power to do, that is, to discharge the lien held by the original creditor and to recreate it for the one making the payment. This cannot be accomplished either actually or virtually when the debtor is without authority to deal with the encumbered property.

The foregoing distinction is the basis of the court's decision in Employers' Casualty Company v. City of Wolfe City, 119 Texas 552, 558, 25 S. W. (2d) 320, 35 S. W. (2d) 694. Bradshaw entered into a contract with the city to built a waterworks dam, Employers' Casualty Company executing his bond which, as required by statute, ran in favor of persons and corporations furnishing labor and material. (Article 5160, Revised Civil Statutes 1925, as amended by Chapter, 226, Acts Regular Session 41st Legislature). Suit was filed by the city against Bradshaw and Employers' Casualty Company after Bradshaw failed to complete the work. First State Bank of Wolf City intervened, seeking recovery of $3800.00 alleged to have been paid by it in settlement of claims of laborers and materialmen against Bradshaw. The Court of Civil Appeals affirmed the trial court's judgment in the bank's favor against Bradshaw and against Employers' Casualty Company on the bond, holding that the bank was subrogated to the rights of the laborers and materialmen to recover on the bond, because at the time the money was advanced by the bank to pay their claims Bradshaw agreed that the Bank should be subrogated

to the rights of the claimants. 3 S. W. (2d) 527, 531. The Supreme Court reversed the judgments of the trial court and the Court of Civil Appeals, which awarded the bank judgment on the bond, and denied the bank any recovery against Employers' Casualty Company. The ruling of the Court and the reasons supporting it are thus clearly stated in the opinion written by Justic Critz, then commissioner:

"We understand in this connection that the bank contends that the agreement between the debtor, Bradshaw, and itself, together with the other circumstances, is sufficient to work subrogation of the creditors' security in favor of the bank. We cannot sustain this contention. It is true that subrogation may accrue on an agreement between a volunteer and a debtor as held in Fievel v. Zuber, 67 Texas, 275, 3 S. W. 273, and other authorities cited by the Court of Civil Appeals. *However, these authorities do not have application here for the reason that Bradshaw had no authority to deal with the bond, which is the property on which the lien was sought to be fixed by the transactions and agreement between him and the bank.* In the case at bar, neither Bradshaw, the City, nor the bank had any authority to deal for the Casualty Company. At the time the bank advanced the money it took no assignment of the lien of laborers or materialmen, and it, the bank, had no claims against the bond that it was necessary for it to protect by paying the laborers and materialmen. Such being the case it was a pure volunteer, and is not entitled to any judgment against the bonding company. *Certainly the bank could not be subrogated to any rights of the laborers or materialmen against the bond by virtue of its agreement with Bradshaw, for the reason that Bradshaw had no authority to deal with the bond.*" (Our italics.)

The court treated the bond given for the benefit of laborers and materialmen as property against which a lien was sought to be fixed in favor of the bank by virtue of the agreement between the debtor and the bank, and held that no lien could thus be given to the bank, and that the bank could not by virtue of the agreement be subrogated to the rights of the laborers and materialmen against the bond, because Bradshaw had no authority to deal with the bond, that is, no authority to create a lien against the property. The question decided is the same as that under consideration here, the only difference in the facts being that in this case the effort made is to sustain a claim to the right of subrogation to laborers and material-

men's rights in a fund retained, rather than in a bond, given for their benefit.

■ It has uniformly been held that statutory liens and bonds given pursuant to statute for the benefit of those who furnish labor and material do not extend to those who advance money to pay for labor or material, and that lenders of money to contractors to be used for the payment of labor performed and material furnished for construction work do not become subrogated to the rights of laborers and materialmen so as to be protected by such bonds. Gaylord v. Loughridge, 50 Texas 573; Hess & Skinner Engineering Company v. Turney, 110 Texas 148, 156, 216 S. W. 621; Employers' Casualty Company v. County of Rockwell, 120 Texas 441, 448, 35 S. W. (2d) 690, 38 S. W. (2d) 1098; West v. First Baptist Church of Taft, 123 Texas 388, 406, 71 S. W. (2d) 1090. A decision that substitution of lenders of money to the places of laborers and materialmen could be accomplished merely by virtue of agreements of the contractors that they should be subrogated would have the effect of extending the benefits of these statutory rights and liens to persons for whom they were not intended, and would tend to defeat the purpose of the statutes.

The trial court and the Court of Civil Appeals correctly concluded that plaintiffs in error had no lien against the fund retained by the State Highway Commission.

To the action of the trial court in rendering personal judgment in favor of John W. Goodrum against C. H. Verschoyle in the sum of $2250.00 error is assigned on the ground that the judgment is supported neither by pleading nor by proof. The contention made with respect to pleading is that Goodrum did not in his petition in intervention seek the recovery of personal judgment against Verschoyle. The substance of the allegations of the petition is as follows: Goodrum rented to Holifield for $750.00 per month certain machinery used in constructing the road and prior to July 15, 1932, filed and presented to the State Highway Commission a claim for $2250 for the use of the machinery for the months of April, May and June. On July 15, 1932, Goodrum was induced by Holifield and Verschoyle, who in connection with Bates had a claim against Holifield for more than $26,000.00, to release his lien for the $2250.00 and to accept in lieu of his lien against the money earned by Holifield a note executed by Holifield secured by an indemnity bond signed in the name of Consolidated Indemnity & Insurance Company as surety by its attorney in fact, Vershoyle, who represented that he was the agent and at-

torney in fact for said company and exhibited with a bond a certified copy of a power of attorney authorizing him to act. Soon thereafter Goodrum discovered that Verschoyle was not the agent and attorney in fact for said indemnity company and had no authority to execute the bond and that the authority represented by the power of attorney had expired before the execution of the bond, the copy exhibited having been changed so as to show the expiration date to be subsequent rather than prior to the time when the bond was made. Request by Goodrum to reinstate the claim for $2250.00 was granted by the State Highway Commission "upon the condition, however, that an amount sufficient to cover said $2250.00 is released by one or more of the previous claims referred to." The pleader's allegation of the right claimed by him and sought to be enforced on account of the foregoing facts is in the following language: "In view of the ruling of the State Highway Commission in regard to said sum of $2250.00, this intervenor alleges that by reason of the fraud practiced by said C. H. Verschoyle so much of the claim made by said C. H. Verchoyle and due him of the claim of $26,545.24 should be made by the judgment of this court subject to the payment of the claim of intervenor for the sum of $2250.00 so due him, and for which said release was given by reason of the fraud practiced upon intervenor by claimant." Goodrum's petition sets out another claim for $2250.00 unaffected by the said release, alleging that such other claim was presented to the State Highway Commission and duly allowed. The petition in intervention further alleges the execution by Dozier Construction Company and its surety, American Indemnity Company, of the statutory bond given when the contract for the road was made and alleges that if there should not be funds in the hands of the State Highway Commission sufficient to pay his claim in full, then he is entitled to judgment against Dozier Construction Company and American Indemnity Company jointly and severally on the said bond. The first prayer of Goodrum's petition is that he have judgment for the sum of $4500.00, and if there should not be sufficient funds in the hands of the State Highway Commission or in the registry of the court to pay the full amount, then that he have judgment jointly and severally against Holifield, Dozier Construction Company, its receiver and American Indemnity Company for any unpaid balance after exhausting the amount in the hands of the Highway Commission or in the registry of the court. The second prayer, which is made in the alternative, is: "That if it be held by this court that the $2250.00 so released by reason of the fraud practiced

upon the intervenor, that intervenor have judgment for said amount of $2250.00 out of the claim filed in this court by said C. H. Verschoyle and Bates, and intervenor prays for attorney's fees in a reasonable amount and for costs and for general and equitable relief."

The trial court found the facts with respect to Goodrum's claim for $2250.00, its release and the unauthorized execution of the indemnity bond substantially as they were alleged in the petition in intervention and rendered personal judgment against Holifield and Verschoyle for $2250.00 with interest and in addition thereto judgment directing that Goodrum's other claim for $2250.00 be paid out of the fund in the registry of the court.

While certain of the facts alleged in Goodrum's petition in intervention may be sufficient to support a conclusion of personal liability on the part of Verschoyle to Goodrum, there is no allegation in the petition of the existence of such personal liability and no suggestion of an intention to enforce any such personal liability. The petition alleges that by reason of the execution of the contractor's bond and other facts averred Dozier Construction Company and its surety, American Indemnity Company, became liable to Goodrum for the full amount of his claims, but there is nowhere an allegation that Verschoyle under the facts alleged became personally liable to Goodrum. The only right alleged as arising to the intervenor from the facts averred, as far as Verschoyle is concerned, is right to subject part of Verschoyle's claim asserted herein to the payment of intervenor's claim for the sum of $2250.00. This is not the right to a personal judgment but the right to collect intervenor's claim out of a fund or claim belonging to Verschoyle. There is nothing in the petition in intervention, unless it is the prayer for general relief, that would put Verschoyle on notice that Goodrum was either asserting or seeking to enforce a personal liability against him .

■■ While it is true that under our system of pleading the cause of action depends upon the facts stated in the petition that are appropriate for a recovery rather than upon the particular breach laid or the specific relief prayed (Lee v. Boutwell, 44 Texas 151, 154, White v. Texas Motor Car & Supply Co., (Com. App.) 228 S. W. 138, 140) it is also true that a plaintiff can recover only the right in which he sues and upon facts stated in his pleadings as the basis of that right, and that an added prayer for general relief cannot serve to embrace a cause of action not within the pleadings. Milliken v. Smoot, 64 Texas 171; Smith v. Patton (Com. App.) 241 S. W. 109;

Adleson v. B. F. Dittmar Co., 124 Texas 564, 569, 80 S. W. (2d) 939; Jennings v. Texas Farm Mortgage Company, 124 Texas 593, 600, 80 S. W. (2d) 931. We do not find in Goodrum's petition any facts alleged as giving rise to personal liability on the part of Verschoyle or as constituting the basis of an asserted right to recover a personal judgment against him. It is our opinion, therefore, that the personal judgment rendered in favor of Goodrum against Verschoyle is not supported by pleading.

■ In view of the reversal of the judgment in favor of Goodrum against Verschoyle because of insufficient pleading, it is unnecessary to determine whether the record shows a want of competent evidence to sustain the trial court's findings on which that portion of the judgment was based, that Verschoyle's authority to execute bonds as attorney in fact for Consolidated Indemnity & Insurance Company was revoked before he executed the bond to indemnify Goodrum. Since this issue will be tried again, however, it is proper to express our opinion as to the admissibility of certain evidence admitted over Verschoyle's objection and considered by the court in its determination of the issue. The court admitted in evidence a copy, certified by the county clerk of Dallas County as a true copy of the original appearing in the deed records of Dallas County, of an instrument executed by Consolidated Indemnity & Insurance Company on February 2, 1932, and acknowledged in the form used for acknowledging deeds, reciting that the power of attorney theretofore given to Verschoyle was revoked and annulled. Verschoyle objected to this instrument on the ground that there was no authority in law for its registration in the office of the county clerk and that the certified copy and the record thereof were void and of no effect. The objection should have been sustained. We are cited to no statute, and we find none, authorizing the recording of such instrument in the deed records or elsewhere in the office of the county clerk. When an instrument is not required or permitted to be recorded in a public office, the officer's certificate gives no legal authenticity to a copy. Southwest Surety Insurance Company v. Anderson, 106 Texas 46, 155 S. W. 1176.

■ The trial court should have sustained Verschoyle's objections to two letters written by the vice-president of Consolidated Indemnity & Insurance Company to the First National Bank of Seguin, stating in substance that the company had revoked the power of attorney to Verschoyle before the execution of the bond indemnifying Goodrum. The only proof made as predi-

cate for the introduction of the letters was that the signature to each of the letters was the genuine signature of Arthur H. Hayum, who was vice-president of the Consolidated Indemnity & Insurance Company. The objection made was that the letters were hearsay and not sworn to and that no opportunity to cross examine the writer had been afforded.

■ The sum of $2,814.23 of the judgment for $10,786.57 rendered in favor of Standard Accident Insurance Company as assignee of Verschoyle against Holifield represents the principal of two notes, one for $2,000.00 payable to Gulf Refining Company and the other for $814.23 payable to Acme Wire & Iron Works, which notes were paid by Verschoyle and transferred to him. The judgment for said $2,814.23 bears interest at six per cent per annum from July 15, 1932, the date of the notes. No judgment was rendered for the ten per cent additional as attorney's fees provided for in the notes, although Verschoyle sued on the notes with proper allegations for recovery of the attorney's fees and although the trial court found that the notes were placed in the hands of Verschoyle's attorneys, with agreement to pay them the ten per cent attorney's fees for their services in collecting the notes, and that the said fee was the reasonable and customary fee for such services. The trial court concluded that Verschoyle was entitled to recover the principal and interest on these notes. There is no explanation in the record of the court's failure to include the attorney's fees in the amount adjudged. Such being the pleadings and the facts found, judgment should have been rendered for the attorney's fees as well as for the principal and interest. The Court of Civil Appeals construed Verschoyle's pleading as suing both on the accounts in settlement of which the notes were given and on the notes, and was of the opinion that the trial court treated Verschoyle's pleading of the accounts as an election to sue thereon instead of on the notes. We do not so construe the pleading. The suit is on the notes, the facts as to the original accounts or claims being alleged to show that the notes were given for material and equipment in an effort to sustain the claim of a lien on the retained fund. The judgment in favor of Standard Accident Insurance Company against Holified will be reformed so as to add to the amount of the same the ten per cent additional as attorney's fees on the two notes.

■ By several assignments of error plaintiffs present the contention that Verschoyle as owner of the two notes above described payable to Gulf Refining Company and Acme Wire & Iron Works is entitled to a lien and to the right to partici-

pate in the fund retained and paid into the registry of the court. We have carefully considered these assignments and are of the opinion that the trial court correctly denied Verschoyle the right to participate in the retained fund as the owner of these notes, because the owners of the claims in settlement of which the notes were given not only accepted the notes and additional security for their claims but expressly released their liens against the fund. We approve the conclusions expressed by the Court of Civil Appeals in its discussion of this question as to the Gulf Refining Company's claim, which are equally applicable to the Acme Wire & Iron Works claim.

We also approve, after careful consideration of the briefs and the record, the disposition made by the Court of Civil Appeals of the assignments of error relating to the judgment rendered in favor of The Ogburn Company against Verschoyle and Holified for $1,294.70, and the judgment rendered in favor of Col-Tex Refining Company against Verschoyle and Holifield for $5,028.42. These judgments are in our opinion supported by the facts found by the trial court, which are stated with sufficient fullness in the opinion of the Court of Civil Appeals. They are not unconditional personal judgments against Verschoyle and Holifield. The first part of the trial court's judgment approves Col-Tex Refining Company's claim for $5,028.42 and The Ogburn Company's claim for $1,294.70 as two of the claims entitled to participate in the fund in the registry of the court. The judgment further expressly provides that payment of Col-Tex Refining Company and to The Ogburn Company from said fund shall operate as credits upon the judgments rendered in favor of said companies against Verschoyle and Holifield. It is shown by a finding of the trial court that the money in the registry of the court is sufficient in amount to pay the claims of the plaintiff and all of the claims approved by the court as far as the principal amount of the claims are concerned and forty-two per cent of the interest.

All assignments of error have been considered and none, except those hereinbefore sustained, presents reversible error.

Several of defendants in error have filed a motion to set aside the order granting the writ of error herein and to dismiss the appliction for the writ, on the ground that the application does not state (as was required by subdivisons (d) of Rule 1 for the Supreme Court prior to its amendment on November 23, 1938) that the particular ruling or decisions sought to be reviewed were assigned as error in the motion for rehearing in the Court of Civil Appeals.

The application for writ of error, under the title "State-

ment of the Case" and immediately before the statement of the grounds of jurisdiction, contains the following:

"The Court of Civil Appeals, on December 18, 1935, rendered judgment affirming the judgment rendered by the District Court. Motion for rehearing was seasonably filed and was overruled by the Court on February 19, 1936.

"The Assignments of Error and the rulings of the Court will all be treated herein as attacked in the motion for rehearing. The ground will be arranged in logical order."

■ It is our opinion that the statement that "the assignments of error and the ruling of the Court will all be treated herein as attacked in the motion for rehearing" means in substance and in effect that the assignments of error presented and sought to be reviewed in the application treat and present the same rulings of the Court of Civil Appeals as those which were attacked in the motion for rehearing, and in the same order. This constitutes substantial compliance with the rule. Literal compliance is not required. Robinson v. Commercial Standard Insurance Company, 132 Texas 163, 123 S. W. (2d) 337, 6 TSCR 6. The motion to set aside the order granting the writ of error and to dismiss the application for the writ is over ruled.

The judgments of the district court and the Court of Civil Appeals in favor of John W. Goodrum against C. H. Verschoyle for $2250.00 are reversed and the cause is, as to Goodrum's suit against Verschoyle, remanded to the district court. The judgments of the district court and the Court of Civil Appeals in favor of Standard Accident Insurance Company against R. B. Holifield are reformed so as to change the amount of the judgment in favor of said company against Holifield from $10,786.57 to $11,067.99, with interest at six per cent per annum on $2814.23 of said amount from July 15, 1932 until paid. In all other respects the judgments of the district court and the Court of Civil Appeals are affirmed. One-tenth of the costs in the Court of Civil Appeals and in the Supreme Court are assessed against defendant in error John W. Goodrum and the balance of the costs in said courts are assessed against plaintiffs in error.

Opinion adopted by the Supreme Court January 25, 1939.

Rehearing overruled March 8, 1939.