**LA–REY, INC., Appellant,**

**v.**

**Fredericka Yates KOWALSKI (Leonard), Appellee.**

**No. 14713.**

Court of Civil Appeals of Texas.

San Antonio.

Oct. 23, 1968.

Marcel Notzon, II, Argentina Cronfel, Mann, Cronfel & Mann, Laredo, for appellant.

Hall & Juarez, Laredo, for appellee.

BARROW, Chief Justice.

The primary question presented by this declaratory judgment appeal is whether payment of a secured indebtedness with the proceeds of credit life insurance inured to the benefit of the insured debtor's widow or to the assuming grantee. The trial court determined that said payment inured to the benefit of the appellee widow who had subsequently remarried, and entered judgment that she recover from appellant the sum of $4,718.54, with certain interest provisions. Appellant duly appealed from this judgment and appellee has asserted a cross-point urging that she is entitled to judgment for foreclosure of the chattel mortgage lien securing said indebtedness, together with reasonable attorney's fees.

All facts were stipulated to the trial court. On December 15, 1965, Louis Kowalski, Jr., husband of appellee, executed a conditional sales agreement whereby he agreed to purchase certain garage machinery and equipment from Jacobs Distributing Co., and in consideration thereof he executed a note in the amount of $9,436.94, payable

in 24 installments at the Brooks Field National Bank of San Antonio. This note was immediately assigned by Jacobs to said Bank. Included in said note was a premium of $165.20 for a credit life insurance policy which was issued by Three Americas Life Insurance Company on the life of Kowalski with the Brooks Field National Bank as credit beneficiary for the amount owed on the note, and with the estate of the insured being named as beneficiary for any excess.

On November 1, 1966, Kowalski entered into a letter agreement to sell his service station, together with all equipment, to three individuals for an estimated price of $29,623.74, pending actual inventory of the equipment. This agreement provided that the three contracting individuals would form a private corporation and, in accordance therewith, appellant, La-Rey, Inc., was created and succeeded to their rights. On November 28, 1966, Louis Kowalski executed a bill of sale to appellant to said station and equipment for the total price of $26,404.53. The note and lien to the Bank were expressly recognized therein and appellant assumed and agreed to pay said outstanding indebtedness in accordance with the terms and conditions of said note. There was no reference to the credit life insurance policy in the agreement. The parties stipulated that the equipment covered by this note was of the appraised value at this time of $7,914.77 after a 15% discount was given appellant, and appellant assumed, as a part of the agreed purchase price, payment of the remaining balance of $5,933.00 due the Bank on said note.

Although the original agreement between Kowalski and the three individuals provided that the owner of the note would consent to the assumption of the balance by appellant, the Bank never took any action whatsoever so as to relieve Kowalski of his primary obligation to the Bank on said note. Three payments were made on the note by appellant prior to Kowalski's death on February 9, 1967. In March, 1967, Three Americas paid the Bank the remain-

ing indebtedness of $4,718.54 due on said note, and the Bank marked the note paid and returned it to appellee. No further payments were made by appellant, but in June, 1967, it filed this suit for declaratory judgment and in its petition alleged that it was willing to tender any amount that the court might require.

■ It is clear that as between Kowalski and appellant, the latter was primarily liable on this note with Kowalski liable as surety. Gunst v. Pelham, 74 Tex. 586, 12 S.W. 233 (1889); 9 Tex.Jur.2d Bills and Notes, § 123. Appellant concedes that where a surety is required to discharge an indebtedness or obligation of his principal, he is subrogated to the rights of the creditor. See Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663 (1931); Halpenny v. Maldonado, 415 S.W.2d 16 (Tex.Civ.App.—San Antonio 1967, no writ). It urges, however, that appellee was only a mere volunteer in making this payment and therefore not entitled to subrogation. Verschoyle v. Holifield, 132 Tex. 516, 123 S.W.2d 878 (1939); Small v. Brooks, 163 S.W.2d 236 (Tex.Civ.App.—Austin 1942, writ ref'd w.o.m.).

Both parties state there is no Texas case in point on this question and we have found none in our own research. Each party relies, however, on conclusions stated in a review of Betts v. Brown, 219 Ga. 782, 136 S.E.2d 365 (1964) by Mr. William A. Thau, Jr., in 43 T.L.R. 580. Mr. Thau correctly reasons that as between the creditor and the insured debtor, credit life insurance is treated as collateral security and therefore payment of the debt with credit life insurance is payment by the insured debtor, just as payment with any collateral security is payment by the owner thereof. The presence of an assuming grantee who has no right to change the beneficiary under the policy, and therefore no claim of ownership, should not alter that result. Here there was no agreement between Kowalski and appellant relative to said insurance policy and therefore appellant has no claim of ownership of same.

In Betts v. Brown, supra, the Georgia Supreme Court held that payment of the debt with proceeds of a credit life insurance policy was an involuntary payment by the insured resulting in a right of subrogation by the insured's estate against the assuming grantee. It is seen that the note involved there was actually in default at the time of insured debtor's death although no foreclosure proceedings or other action had been instituted against the debtor. Mr. Thau questions whether in a situation where the note is not in default, as in our case, the payment will still be considered involuntary by the insured debtor.

■ We conclude that payment of this collateral security on the death of Kowalski was an involuntary payment insofar as he and his estate are concerned. The credit beneficiary had the right to such proceeds on his death without consent or agreement by insured's estate. Since neither the insured nor his estate had any control over the use of these funds or the time that they were used, we consider said payment as one other than that of a mere volunteer.

Similar results have been reached in cases from other jurisdictions. In Kincaid v. Alderson, 209 Tenn. 597, 354 S.W.2d 775 (1962), it was determined that to hold that the proceeds of the policy inured to the benefit of the assuming grantee would amount to an unjust enrichment of said grantee. Accordingly, grantee was required to reimburse the surety to the extent of the enrichment. Citing Restatement Security, § 104. Similar results were reached in Hatley v. Johnston, 265 N.C. 73, 143 S.E.2d 260 (1965), and Tighe v. Walton, 283 Miss. 781, 103 So.2d 8 (1958). In Miller v. Potter, 210 N.C. 268, 186 S.E. 350 (1936), subrogation was denied, but in that case the creditor had purchased the policy and therefore was the owner of same.

■ Furthermore, Kowalski remained primarily liable to the Bank, since it did not consent to the assumption of the note or take any other action to recognize appellant as the primary debtor. In Verschoyle v. Holifield, supra, the following definition of a volunteer was quoted with approval from 25 Ruling Case Law 1325, § 11: "A stranger or volunteer, as those terms are used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt, and whose property is not charged with the payment thereof and cannot be sold therefor. He is not necessarily one who has had nothing to do with the transaction out of which the debt grew. Anyone being under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer. A person who is under no obligation whatever to pay the debt of another secured by a mortgage, and who has no interest in or relation to the property, is a volunteer, within the meaning of the rule." Neither Kowalski nor his estate can be called a "mere volunteer" under this definition. It has been said that a surety may protect himself by settling at any time, without prejudice to the principal, the indebtedness for which he is liable, payment before maturity not being deemed voluntary. 50 Am.Jur., Suretyship, § 238; 83 C.J.S. Subrogation § 48a (2).

■ The trial court did not err in concluding that appellant's obligation was not discharged as a result of payment of the note by the credit life insurer. Since appellant was legally a stranger to said policy, it is not in a position to urge or complain that the insurer was not obligated to make this payment under terms of the policy.

■ A more difficult question is presented as to appellee's right to attorney's fees and foreclosure of the lien, in that by filing this suit for declaratory judgment appellant indicated every willingness to carry out the terms of the judgment. However, three payments were overdue at the time this suit was filed and neither these, nor the other monthly payments were made or tendered into the registry of the court. There is no stipulation which would relieve appel-

**534**

lant of its obligation to make such monthly payments. It was stipulated that in the event attorney's fees were recoverable, a reasonable fee would be 20% of the principal balance owing on said note. It is seen that the entire note was due and payable by the time this judgment was entered. Since we have held that appellee was subrogated to the rights under said note and chattel mortgage lien, she therefore is entitled to recover her attorney's fees as stipulated and to have execution on this judgment through foreclosure under the terms of said chattel mortgage.

The judgment of the trial court is accordingly reformed to provide that appellee recover the sum of $943.70 as attorney's fees and that she have foreclosure of said chattel mortgage lien. In all other respects the judgment is affirmed.