Joe CASANOVA, Appellant,

v.

FALSTAFF BEER, Inc., Appellee.

No. 3302.

Court of Civil Appeals of Texas.

Eastland.

June 7, 1957.

Rehearing Denied July 12, 1957.

M. M. Pena, Jr., William E. Remy, San Antonio, for appellant.

Clifton & Tynan, San Antonio, for appellee.

COLLINGS, Justice.

Joe Casanova brought this suit against Falstaff Beer, Inc., a Texas corporation. Plaintiff alleged a contract between the parties whereby he agreed to sell and defendant agreed to purchase all of plaintiff's beer distributing business and all assets connected therewith except the use

of Joe Casanova as a trade name, plaintiff's telephone number, office equipment, the lease on the building and premises in which plaintiff's business was operated and his trucks. Plaintiff alleged that the consideration agreed upon between the parties was $17,500, plus the actual cost of the merchandise and advertising media that plaintiff had on hand. Plaintiff alleged that he fully complied with his obligations under the contract; that he delivered to the defendant possession of his beer distributorship business, stock of merchandise, advertising media and other assets that were included in the sale; that defendant paid to plaintiff $30,359.66, which was the actual cost of the merchandise and advertising media as agreed upon by the parties, but that the defendant wholly failed to comply with its obligation to execute its promissory note in the sum of $17,500, which together with the agreed cost of the merchandise and advertising media, was the purchase price which defendant contracted to pay for plaintiff's said business. The defendant answered by a general denial. Trial was before the court without a jury and judgment was rendered in favor of the defendant. Joe Casanova has appealed.

For a number of years prior to June, 1854, Joe Casanova was the distributor for Falstaff Brewing Corporation of St. Louis, Missouri, in the territory known as the west side of the City of San Antonio, Texas. Defendant, Falstaff Beer, Inc., is a Texas corporation and John J. Monfrey is its president. Defendant had for some time prior to June, 1954, been distributor for all of San Antonio except the territory on the west side which was held by appellant, Joe Casanova. The following additional facts were established by findings made and filed by the trial court:

"III.

"That in May of 1954, John J. Monfrey, the President of the defendant corporation, was notified by the representatives of the Falstaff Brewing Corporation of St. Louis, Missouri, that he was appointed the distributor for the West side area of San Antonio and was at that time advised by said representatives of the Falstaff Brewing Corporation of St. Louis, Missouri, to negotiate the purchase of the business of Joe Casanova Distributing Company; that in May, 1954, plaintiff was informed by Falstaff Brewing Corporation of St. Louis, Missouri, that he would no longer be the Falstaff beer distributor in San Antonio, Texas.

"IV.

"That some initial negotiations were made between the plaintiff and the defendant through its President, John J. Monfrey, between the 20th of May and the 27th of May, 1954.

"V.

"That on May 27, 1954, two separate offers in writing were submitted by the defendant, by and through its President, John J. Monfrey, to plaintiff, as evidence by plaintiff's Exhibits 1 and 2. That said proposals were by their terms to become null and void after June 1, 1954, and so became by lack of acceptance on the part of the plaintiff at or prior to said date of June 1, 1954.

"VI.

"That on June 4, 1954, plaintiff through his agent, M. M. Pena, Jr., and the defendant through its President, John F. Monfrey, entered into an oral agreement whereby the plaintiff was to sell and the defendant was to buy the business of Joe Casanova, doing business under the trade name of Joe Casanova Falstaff Distributor in that territory situated in Bexar County, Texas, and that portion of the City of San Antonio being theretofore operated by Joe Casanova, doing business under the trade name of Joe Casanova Falstaff Distributor, together with the good will and other intangible

assets owned by the plaintiff in such operation; the plaintiff retaining the exclusive right to any trade name using 'Joe Casanova' as a part thereof, and, in consideration therefor, the defendant agreed to pay the sum of $17,500.00 and execute a note therefor in 28 monthly installments of $600.00 each and one installment of $700.00, the first payment being payable on or before the first day of July and like payments thereafter until all 28 payments of $600.00 each and one additional payment of $700.00 were to be paid, and that a bill of sale, acceptable to counsel for defendant, was to be submitted to the defendant by the plaintiff incorporating such terms; and that at such time it was further agreed that on June 5, 1954, representatives of plaintiff and defendant were to meet at the warehouse of plaintiff for the purpose of inventorying the beer stocks on hand by plaintiff and advertising media on hand by plaintiff which the defendant agreed to buy and plaintiff agreed to sell at the laid-down cost.

"VII.

"That on June 5, 1954, plaintiff and his representatives met defendant and its agents, including John J. Monfrey, President of the defendant corporation, at the warehouse of the plaintiff, at which time all of the stock of Falstaff beer owned by the plaintiff and the advertising media of the plaintiff were transferred to the defendant and the defendant paid plaintiff for same in cash at said laid-down cost.

"VIII.

"That at the time of the transfer of said inventory and advertising media, the defendant corporation, through its President, John J. Monfrey, stated that is would execute the note for $17,500.00 during the succeeding week and deliver said note upon approval of the bill of sale by defendant's attorney.

"IX.

"That subsequent to the meeting of the agent of plaintiff, M. M. Pena, Jr., and the President of the defendant corporation, John F. Monfrey, on June 4, 1954, no good will was transferred or delivered by the plaintiff to the defendant; that subsequent to said date, on June 5, 1954, the plaintiff instructed his employees to inform callers for beer that Falstaff beer was no longer in San Antonio; that from and after June 5, 1954, plaintiff refused to transfer requests for orders for Falstaff beer to the defendant corporation and instructed his employees to inform prior customers of Joe Casanova, doing business under the trade name of Joe Casanova Falstaff Distributor, that his franchise had been taken away from him by the Falstaff Brewing Corporation of St. Louis, Missouri, and to encourage said customers to buy no more Falstaff beer, and that the employees of the plaintiff followed said instructions.

"X.

"That the attorneys for plaintiff and defendant, towit, the Honorable M. M. Pena, Jr., and the Honorable George C. Clifton, in negotiating and discussing a bill of sale to be delivered from Joe Casanova to the defendant, agreed to draft Plaintiff's Exhibt No. 4 in the first paragraph thereof and adding thereto: 'retaining, however, the exclusive right to any trade name using "Joe Casanova"' as a part thereof; and agreeing to substitute for paragraph 2 the recitation of consideration in the sum of $17,500.00 by execution of defendant of a note therefor in 28 monthly installments of $600.00 each and one additional installment of $700.00, the first payment thereof being due and payable on or before the

first day of July, 1954, and a like payment each month thereafter until all of said $600.00 payments had been paid and one following monthly payment of $700.00 had been paid; delinquent payments to bear interest at the rate of 6% per annum; paragraph 3 of said instrument was agreed to be revised as follows: 'It is further agreed and understood that the Falstaff Beer, Inc., has this date purchased from said Joe Casanova all stock and certain other personal property used in the operation of the business of Joe Casanova Falstaff Distributor, paying an additional and further consideration therefor'.

"XI.

"That an instrument of the tenor hereinabove referred to in Paragraph X was never submitted or tendered to the defendant by the plaintiff wherein good will was mentioned or included.

"XII.

"That no note for the sum of $17,500.00 was tendered or delivered by the defendant to plaintiff.

"XIII.

"That the sum of $17,500.00 was not paid by the defendant to plaintiff (over and above the payment made for beer stock and advertising media)."

The court found that Joe Casanova by oral contract agreed to sell and the defendant Falstaff Beer, Inc., agreed to buy the business of Casanova as Falstaff Beer Distributor together with the good will and other intangible assets of his business and to pay therefor the sum of $17,500 by a note payable in 28 monthly installments of $600 each and one monthly installment of $700 and to pay Casanova the "laid-down cost" of the beer stock and advertising media which Casanova had on hand. It is undisputed that after an inventory the Falstaff Beer and advertising media in Casanova's possession were delivered to

the defendant and that he paid Casanova the agreed cost thereof, to wit, the sum of $30,359.66. There is no dispute about the cost of the beer and advertising media, or of the fact that these items were delivered to and received by the defendant. The dispute concerns the question of whether "good will" was included in the oral contract of sale, and was the consideration for defendant's agreement to pay $17,500, which it is conceded the defendant has not paid, and whether appellant is entitled to recover this $17,500 regardless of the fact that he has not delivered "good will."

Defendant contends that Casanova is not entitled to recover the $17,500 because he failed to comply with his agreement to deliver good will. As a general rule a plaintiff to recover has the burden to show the existence of the contract sued upon and that he has complied with its provisions. 10 Tex.Jur. 526. Appellant urges in several points that the sale of his business to Falstaff Beer, Inc., did not include good will; that there was no agreement that he should convey or deliver any good will to the defendant. He says that he sold his business to the defendant with certain reservations and that he has fully complied with all that was required of him under the oral contract of sale. We overrule appellant's contention that the oral contract of sale did not include good will. John F. Monfrey, president of the defendant corporation, testified that Casanova agreed to deliver to defendant the good will of his business and to take $17,500 therefor. The court found that good will was included in the sale and in our opinion the evidence supported the finding.

Casanova further contends that under the circumstances there was nothing for good will to attach to or to remain with because by the agreement of the parties the sale did not include the trade name of Joe Casanova, the rental contract on his warehouse, his telephone number, or the

trucks used in his business. It is true, as contended by Casanova, that the sale did not include the franchise for Falstaff Beer in the territory in which appellant operated his business. Appellant could not sell this franchise because it had been taken away from him and did not belong to him at the time of the sale. It had been previously acquired by the defendant. Casanova had operated his business as distributor for Falstaff beer in the western part of San Antonio for several years. He had enjoyed an established business and as an incident thereto had a certain good will in that territory with the retail trade. This good will which Casanova enjoyed in the western part of San Antonio was of value to a purchaser of what was left of his established business entirely apart from the items which were excepted from and not included in the sale. Appellant's case is based upon the theory that he sold his business to appellee even though many of its assets were not included. His good will was a part of his established business and was capable of being disposed of and incident thereto. 38 C.J.S. Good Will § 3, p. 951. His good will as the Falstaff beer distributor in this territory and the other intangible assets of his business had such value that the defendant Falstaff Beer, Inc., desired to purchase same and was willing to pay and contracted to pay $17,500 therefor. We overrule appellant's contention that there was nothing passing in the sale to which good will could attach and that, therefore, good will was not included in the sale.

■ In other points it is urged by appellant that there was only one sale of the business of Joe Casanova to the defendant Falstaff Beer, Inc., which included (1) the merchandise and advertising media on hand for which appellant was to be paid the "laid-down cost" and (2) the other assets of his business which were sold to the defendant for a consideration of $17,500, that the sale was an indivisible contract and that the court erred in treating the two parts of the contract separately.

Appellant contends that if it should be found that he failed to comply with any obligation to deliver good will, that appellee, Falstaff Beer, Inc., upon discovery of appellant's failure was put to an election as to whether it would (1) rescind the contract, (2) sue for damages for breach or (3) bring an injunction suit to enjoin appellant from further breach of the contract involving good will. Appellant contends that since appellee did not elect to avail himself of these remedies he cannot defeat recovery by appellant.

We cannot agree with appellant's contention in this respect. As indicated by appellant, the contract of sale designated two portions of his business and provided the consideration to be paid for each portion. The consideration for the beer and advertising media was the "laid-down cost" of such merchandise. This merchandise was delivered to appellee and appellant has been paid for it. Appellant sold the good will of his business to appellee with a specific consideration designated therefor. Appellee's promise to pay $17,500 was the consideration for appellant's undertaking to deliver good will and other intangible assets of his business. Under these circumstances we hold that before appellant could recover upon the appellee's promise to pay $17,500, he was required to show that he had performed, or that he was ready, able and willing to perform his undertaking to deliver good will. One who has himself broken the contract cannot recover on it. 17 C.J.S. Contracts § 452, p. 932; 10 Tex.Jur. 499; Shuttuck v. Griffin, 44 Tex. 566. Sutton County v. Security Trust Co., Tex.Civ. App., 61 S.W.2d 862 (Writ Ref.).

■■ The court found upon ample evidence that no good will was transferred or delivered to appellee by Casanova. Appellant has his employees inform callers for Falstaff Beer that his franchise had been taken away from him by the Falstaff Brewing Corporation and that Falstaff Beer was no longer in San Antonio. The

bulk of Casanova's customers were of Mexican descent. He instructed and required his employees to impress upon his customers the fact that "a Mexican had been taken away from his distributorship and that they were to throw out Falstaff beer." He encouraged customers and prospective customers of beer to buy no more Falstaff Beer. The sale of good will carries an implied covenant that the seller will do nothing in derogation of that grant. Cottingham v. Engler, Tex.Civ.App., 178 S.W.2d 148. Appellant completely failed to comply with his obligation to deliver good will. He breached his contract in regard to an undertaking which by the terms of the contract carried a specific consideration separate and apart from the remaining portion of the sale. We overrule appellant's contention, in effect, that he was entitled under these circumstances to recover on appellee's promise to pay $17,500 in spite of the fact that he has failed to perform and has made it impossible to perform his promise to deliver good will.

The judgment is affirmed.