Fred W. DALTON, Appellant,

v.

GEORGE B. HATLEY COMPANY, INC., Appellee.

No. 13343.

Court of Appeals of Texas, Austin.

June 2, 1982.

E. Hazen Woods, Jr., Phillips & Neal, Austin, for appellant.

Douglass D. Hearne, Donald W. Holcomb, and Richard L. Crozier, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for appellee.

SHANNON, Justice.

Appellant Fred W. Dalton sued appellee George B. Hatley Company, Inc., in the district court of Travis County to recover alleged profits arising from a written contract between the parties. Appellee filed a counterclaim for recovery of sums paid by appellee for appellant's benefit as an alleged accommodation maker on two promissory notes. After a bench trial, the trial court rendered judgment that appellant take nothing and that appellee recover $20,999.27.

Upon request, the trial court filed findings of fact and conclusions of law. The fact findings may be summarized as follows. Appellee corporation owned a twenty-nine acre tract located in the City of Rollingwood. On April 27, 1977, the parties signed an agreement concerning the development of the land. Dalton agreed to secure the personnel necessary and proper to develop the land into "saleable" lots in a condition to be approved by the Planning Commission of the City of Rollingwood. Dalton also contracted to be in charge of lot sales at a price agreed to by the parties with a commission to Dalton. Appellee contracted to furnish the land and costs for developing the land. Finally, the agreement provided that the sums received from

the sale of the lots would be divided equally between Dalton and the corporation, but only after the corporation had been reimbursed for the value of the land and for the costs of developing the land.

The trial court found, among other things, that Dalton failed to perform under the agreement in that he failed to secure the necessary and proper personnel to develop the land.

On April 26, 1977, Dalton signed a one year promissory note for $10,000 to the American National Bank of Austin. According to the trial court, the note was guaranteed on behalf of appellee by its president as an accommodation to Dalton. Dalton did not pay the note and appellee paid the principal and interest in the sum of $10,838.63.

On August 30, 1977, Dalton signed a real-estate-lien-note for $70,000 payable to the American National Bank. Likewise, in the trial court's view, this note was guaranteed on appellee's behalf by its president as an accommodation to Dalton. Dalton failed to pay the note upon demand and appellee paid the outstanding balance of principal and interest in the total sum of $24,183.00.[1]

The trial court concluded that Dalton failed to perform his responsibilities under the agreement and that such failure was a defense to Dalton's causes of action based upon the agreement and based upon services claimed to have been rendered by Dalton. Further, Dalton's failure to perform was ground for cancellation of the agreement. The court concluded appellee was an accommodation maker on the two notes, and appellee's right of recourse as an accommodation maker was that of a surety against a principal debtor. As such, appellee was entitled to recover the total sum paid by it to the payee less the fair market value of the lot received by appellee.

 Dalton's most important claim is asserted by nine points of error which maintain that all of the evidence was that he

performed under the contract and, alternatively, the finding that he failed to perform was supported by insufficient evidence. In considering a no-evidence point, the reviewing court must reject all evidence contrary to the finding and consider only the facts and circumstances tending to support that finding. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing a factual insufficiency point of error, the court of appeals considers all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

 As Dalton sued on the agreement, it was his burden to establish the existence of the agreement and that he complied with its provisions. *Casanova v. Falstaff Beer, Inc.*, 304 S.W.2d 207, 210 (Tex.Civ.App.1957, writ ref'd n.r.e.); 3A Corbin on Contracts § 749 (1960). To prevail under his no-evidence points, he must demonstrate compliance with the agreement as a matter of law. To succeed on the insufficient evidence points, Dalton must convince this Court that the trial court's finding that he failed to perform under contract was against the great weight and preponderance of the evidence.

The relevant portion of the agreement between the parties provides that "[s]econd Party [Dalton] shall have the obligation to secure contractors, engineers, and other personnel necessary and proper in the development of said tract into saleable lots to be approved by the Planning Commission of the City of Rollingwood and to carry through the development of said subdivision so that all lots shown on the plat to be approved shall be in saleable condition."

The trial court's finding relating to the above portion states:

[p]laintiff [appellant] failed to secure contractors, engineers, and other personnel necessary and proper in the develop-

---

1. When appellee paid off the note, he was conveyed the lot which secured the outstanding balance of the note. Thereafter, appellee sold that real estate for $14,022.47, which sum represented its fair market value. The difference between $24,183.00 and $14,022.47 added to $10,838.63 represents the sum awarded appellee by the trial court's judgment.

ment of said tract into saleable lots to be approved by the Planning Commission of the City of Rollingwood and failed to carry through the development of said subdivision so that all lots shown on the plat to be approved would be in a saleable condition.

The evidence bearing on Dalton's performance under the agreement may be summarized as follows. Terry Sasser, a realtor who helped develop the property, testified that he, and not Dalton, developed the property; that he employed the engineer; and that either he employed or recommended the street and utility contractor. Sasser stated also that he handled the problem of a letter of credit involving the City of Rollingwood and participated in all of the meetings with the City of Rollingwood pertaining to the plat approval of this subdivision. Sasser did testify, however, he frequently saw Dalton on the tract.

Appellee's president, George B. Hatley, testified that Terry Sasser worked with the engineer, street people, and all departments of the City of Rollingwood. Hatley claimed Dalton did not do anything. According to Hatley, Dalton did not secure contractors or engineers but instead Sasser obtained all contractors and made all appearances before the City Council of Rollingwood. Hatley did testify, however, that Dalton had suggested, planned, and held a barbecue on the subdivision tract for members of the Homebuilders Association and that Dalton had a portion of the land cleared by his stepson and possibly others for which Hatley paid the wages.

Leeland Barclay, the engineer for the project, stated that he had no contact with Dalton concerning the engineering work on the property; that Dalton never directed, instructed, or supervised him; and that he, Barclay, erected all lot line stakes and "flagged" corners of the lots. Dalton did not supervise the daily engineering and construction work, did not schedule engineering and surveying work, and did not make arrangements for lot surveys. Barclay testified, nevertheless, that he saw Dalton on the lots several times and that on one occasion Dalton asked him to mark the lot corners.

Earl Maxwell, former mayor of the City of Rollingwood, testified that it was Sasser, not Dalton, who appeared before the city council in an attempt to get the subdivision approved. He did not recall Dalton even being present at any city council meetings or that Dalton ever mentioned to Maxwell that he was involved in the development of the subdivision.

To the contrary, Dalton's evidence was that he worked with Barclay and Sasser to handle the problems with the City of Rollingwood. Dalton testified he also worked with the city inspectors, planning commission and the city council. Mayor Maxwell came by the subdivision regularly and talked to him about its development. It was Dalton's claim that he obtained final approval for the subdivision. He met with Mayor Maxwell at least three times in an effort to aid the development of the subdivision before the plat was approved.

■ Dalton's evidence concerning his performance obviously conflicts with most of the other testimony. The weight and probative force of evidence, of course, is entirely for the trier of fact. Likewise, the trier of fact, the trial court in this instance, is the exclusive judge of the credibility of witnesses and the weight to be attached to their testimony. *Johnson v. Coggeshall*, 578 S.W.2d 556 (Tex.Civ.App.—1979, no writ). In connection with the matter of credibility, the fact finder had the benefit of testimony from two local bankers that Dalton's local reputation for truth and veracity was "rotten" and "not very dependable." There was evidence in support of the court's finding that Dalton failed to perform and that finding was not against the great weight and preponderance of the evidence. Points of error one through nine are overruled.

Dalton also complains of the judgment for appellee on its counterclaim. In its counterclaim appellee pleaded, and the trial court found, that appellee company through its president signed and guaranteed two of Dalton's notes. Since Dalton failed to pay the notes when due, appellee, allegedly paid

the notes. The trial court concluded that appellee company was an accommodation maker on the two notes and, as a result, was entitled to receive the full sums it paid.

By several points of error, Dalton argues there is no evidence or insufficient evidence that the notes were guaranteed on behalf of appellee company by its president as an accommodation maker. He claims further the court erred in rendering judgment for appellee because, as a matter of law, appellee acted as a volunteer in paying off the notes.

The parties agree that both notes were signed simply:

"Fred W. Dalton
George B. Hatley."

■ The fact that George B. Hatley did not indicate his accommodation status on the face of the notes does not preclude him from having that status. Stated another way, the fact that the notes do not indicate the accommodation status of Hatley does not bar proof that he is an accommodation maker. *LeRoy v. Marquette National Bank*, 277 N.W.2d 351 (Minn.1979); see *Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719 (Tex.Civ.App.1977, writ ref'd n.r.e.).

■ Texas Bus. & Com.Code Ann. § 3.415(a) (1968) provides that "[a]n accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." The key words are "in any capacity." Therefore, even though the note on its face does not indicate in what capacity George B. Hatley signed the note, that is, as a maker or an accommodation maker, the fact that his capacity appears to be that of a maker is not conclusive. *V.I.P. Commercial Contractors v. Alkas*, 553 S.W.2d 656 (Tex. Civ.App.1977, no writ).

■ The intention of the parties is, of course, the significant element in determining whether a party is an accommodation maker or a co-maker. 2 Anderson, Uniform Commercial Code § 3–415:9 (2d ed. 1971). In Texas, an accommodation status may be shown by "oral proof," except as

against a holder in due course. Tex.Bus. & Com.Code Ann. § 3.415(c) (1968). In the case at bar however, the intent of the parties cannot be ascertained from the instruments. In such case the purpose for which the instruments were executed or used is significant as evidence of the purpose for which they were given. Anderson, *supra*, at § 3–415:9. Stated differently, where one receives no direct benefit from the execution of the instrument, it is likely that he will be regarded as an accommodation party, but he will not be so regarded if he does receive a benefit. *Id.* Therefore, the fact that a co-maker, such as Hatley, receives none of the proceeds of the loan is some evidence that he is an accommodation maker. *South Side Bank & Trust Co. v. Yorke*, 15 Ill.App.3d 948, 305 N.E.2d 367 (1973).

Testimony from two officials of the payee bank indicated that the lender viewed Hatley as an accommodation maker on the $10,-000 note. The fact that Dalton received all of the proceeds of the loan and Hatley received none, coupled with the fact that the purpose of the loan was to finance Dalton lead to the conclusion that Hatley signed the note as an accommodation maker. Although the evidence with respect to the $10,000 note is less convincing, still it supports the conclusion that Hatley signed as an accommodation maker.

Appellee company's pressing problem, however, concerns the capacity in which Hatley signed the notes. It will be recalled that the trial court concluded that Hatley signed the notes in his capacity as appellee's president. This Court does not agree.

Nothing on the face of the notes indicates that George B. Hatley signed the notes in his capacity as president of appellee company or as an agent for appellee company. The notes were signed merely "George B. Hatley."

■ Hatley *did not* offer evidence that he signed the notes as the president or agent of appellee company. Contrary to appellee's argument, the fact that appellee paid with corporate funds the delinquent notes is not "concrete evidence" that

George B. Hatley was acting in his capacity as president of appellee in signing the notes. Texas Bus. & Com.Code Ann. § 3.403(b) (1968) provides:

An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

Contrary to the trial court, we have concluded that George B. Hatley, not the corporation, was the accommodating maker on the notes. This is so because Hatley, in signing the notes, indicated neither his capacity nor his status as agent for the corporation. Appellee company, under no legal obligation to do so, paid off the notes.

 Finally, Dalton argues in point of error thirty-two that the district court erred in rendering judgment for appellee on the notes because appellee acted as a volunteer in paying off the notes under the rule of *Verschoyle v. Holifield*, 132 Tex. 516, 123 S.W.2d 878 (Tex.1939). We do not view *Verschoyle* as applicable to this appeal. *Verschoyle* deals with equitable subrogation, not negotiable instruments.

The Texas Business & Commerce Code provides that "[p]ayment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (Section 3.201)." Tex.Bus. & Com.Code Ann. § 3.603(b) (1968). Also, "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein ...." *Id.* at § 3.201(a).

We are of the opinion that since appellee paid both notes and the bank surrendered them to appellee, appellee has all the rights of its transferor, the bank, pursuant to §§ 3.201 and 3.603. Dalton argues that appellee company is a stranger to the note but under § 3.603 even a stranger may recover. The only requirement is that the payment be made with the consent of the holder, which it obviously was in this case. *Commercial Savings Bank v. G & J Wood Products Co.*, 46 Mich.App. 133, 207 N.W.2d 401 (1973). In this case a corporation paid the note of an individual. Nevertheless, the corporation recovered based on its acquired rights as a transferee. The individual, coincidentally, happened to be the president of the corporation, which is the same fact situation in this appeal. Point of error thirty-two is overruled.

Dalton has other points of error all of which have been considered, and none of which are meritorious.

The judgment is affirmed.