SOUTHWESTERN ELECTRIC POWER
COMPANY, Appellant,

v.

Mike MARTIN, Appellee.

No. 6–92–010–CV.

Court of Appeals of Texas,
Texarkana.

Oct. 13, 1992.

Rehearing Denied Nov. 18, 1992.

Herbert Boyland, Harbour, Kenley, Boyland, Smith & Harris, Longview, for appellant.

Jim Ammerman, II, Marshall, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Southwestern Electric Power Company (SWEPCO) appeals from an adverse judgment rendered under Article 8307c, Texas Revised Civil Statutes, upon the jury's finding that SWEPCO discriminated against Michael Martin in violation of the Texas Workers' Compensation Act.

SWEPCO raises five points of error in which it contends (1) that as a matter of law SWEPCO's removal of Martin from SWEPCO's rehabilitation program and placing him on long-term disability does not constitute an activity prohibited under the Act; (2) that the evidence was legally and factually insufficient to support the jury's finding that SWEPCO discriminated against Martin in violation of the Act; (3) that the evidence was legally and factually insufficient to support the amount determined by the jury as damages; and (4) that the trial court committed reversible error by refusing to allow SWEPCO to question the jury panel about SWEPCO's motive for placing Martin on long-term disability.

Martin was a lineman working for SWEPCO when he was seriously injured through contact with a 7200–volt line on August 21, 1986. Electricity entered his body through his right hand and went out through his right buttock. He filed a workers' compensation claim in November 1986. He was so severely and permanently injured that he could never return to his work as a lineman. For the period of time that Martin was on sick leave, SWEPCO continued to pay his full salary. As a condition for receiving his full salary, however, Martin was required to endorse his workers' compensation benefits ($217 per week) to SWEPCO.

SWEPCO initially placed Martin into a rehabilitation program that was designed to retrain injured employees for different jobs within the company. Martin entered this program in January 1987 and remained in it through March (when he left for more surgery on his hand) and during August and September of 1987. In October 1987, Jim Ammerman, Martin's attorney, notified the Industrial Accident Board, SWEPCO, and Texas General Indemnity Company about his representation and also obtained a setting for a prehearing conference with the Board. The hearing was to review the possibility of obtaining a lump sum settlement for Martin's compensation claim rather than weekly benefits. This notification took place shortly before Martin filed a lawsuit against the manufacturer of the bucket truck that Martin was using while working on an electric power line at the time of his injury. SWEPCO agreed to meet with Ammerman on November 3, 1987, but that meeting was cancelled after Ammerman informed SWEPCO that it would be a waste of time for them to meet if SWEPCO would not allow him to review its files about the truck manufacturer and the accident.

SWEPCO changed Martin's status from active employee to long-term disability effective November 1, 1987, and informed him of this change on November 3, 1987, by telephone. This reduced Martin's gross income from $2,500 a month to approximately $1,500 per month, the long-term disability amount provided to employees by SWEPCO in accordance with their union contract. SWEPCO reduced this $1,500 payment by the amount of Martin's weekly workers' compensation payment. This resulted in SWEPCO paying him $573.24 per month and workers' compensation paying him $940.33 per month. Martin's status

was changed shortly after informing SWEPCO that he had retained an attorney to assist him in pursuing, not a claim for workers' compensation, but a different form of payment of the previously determined claim. The jury found that his dismissal from the rehabilitation program and the change in status from active to long-term disability constituted a violation of Article 8307c and also found damages for Martin in the amount of $402,000 for loss of future earnings.

SWEPCO initially contends that it should not be liable for changing the status of Martin from full salary to long-term disability because this action taken does not constitute discrimination under the Workers' Compensation Act. SWEPCO also contends that it should not be liable because Martin's request for a lump sum settlement was not the filing of a claim, hiring an attorney, or instituting a proceeding as defined by Section 1 of the Act. The relevant language is found in TEX.CIV.STAT. ANN. art. 8307c (Vernon Supp.1992):

**Article 8307c Protection of Claimants from Discrimination by Employers; Remedies; Jurisdiction.**

Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

█ We first address SWEPCO's contention that the action taken does not constitute an activity prohibited under the Act. Although Martin initially alleged multiple violations of the Act, the proof presented at trial was directed solely at proving his contention that he was discriminated against because he hired an attorney and initiated an action for a hearing on his request for a lump sum settlement. We find that the filing of such a request by Martin constitutes a proceeding under the terms of Article 8307c, Section 1. We further find that if, as the jury found, SWEPCO changed Martin's status from the rehabilitation program to long-term disability status because Martin had, in good faith, instituted a proceeding under the Workers' Compensation Act, that would constitute discrimination.

█ Martin contends that he was discriminated against by being removed from the rehabilitation program and reduced in compensation and status from active full salary to a lower pay scale on the long-term disabled list. Under this provision of the Workers' Compensation Act, an employer may terminate at will an employee who is off work with a job-related injury without violating the proscription against retaliatory discharge, so long as the employer's motive is not to discriminate against an employee for exercising his or her rights under the Workers' Compensation Act. *Harris v. American Red Cross*, 752 F.Supp. 737 (W.D.Tex.1990). Martin was an employee-at-will. The company had no duty to continue his employment or to provide him with a rehabilitation program, but because the company chose to continue Martin's employment and to provide such a rehabilitation program, the company could not choose to discharge him from the program because of his workers' compensation action.

█ In order to prevail on a claim of discrimination, Martin need only show that his workers' compensation claim in some way contributed to the company's discrimination against him. *See Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 390 (Tex.App.–Texarkana 1990, writ denied); *see also Jones v. Roadway Express, Inc.*, 931 F.2d 1086 (5th Cir.1991). Once the claim was instituted, the employer is then required to show good cause in order to support its action. *Mid–South Bottling*

*Co. v. Cigainero,* 799 S.W.2d at 389, and cases cited therein.

SWEPCO contends that the evidence was legally and factually insufficient to support the jury finding that SWEPCO discharged or in any manner discriminated against Martin in violation of the Texas Workers' Compensation Act. In reviewing SWEPCO's no evidence point of error, we must consider only the evidence and the inferences that tend to support the jury's verdict and disregard all contrary evidence. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Lucas v. Texas Indust., Inc.,* 696 S.W.2d 372, 377 (Tex.1984). Martin's evidence in support of the jury verdict includes his testimony and that of his wife, Brenda Martin. He testified that after being injured, he had worked for SWEPCO for several months in the rehabilitation program without any complaint being made about his job performance. There is also testimony that if his supervisors in the rehabilitation program had registered any complaints about his performance those complaints should have appeared in written memoranda. No such memoranda were presented to the jury. Brenda Martin testified that, in telephone conversations with SWEPCO representatives, she was told by Michael Heard, Vice-President of Division Operations, that her husband was placed on long-term disability because of his efforts to pursue his workers' compensation settlement.

Q Did you call Mr. Heard back?

A Yes, I did.

Q Tell us what took place during that conversation.

A Well, there again I can't remember the exact words because it has been quite a while, but I remember exactly what the point is I wanted to find out and that was why all of a sudden they had changed the game plans and put us on disability and so I asked him, I said, "Why have you done this to Mike?", and I said, "Is it because we sought the legal advice, or legal counsel, or a lawyer to help us find out our rights to this workers' compensation settlement", and he said, "Yes."

Although Martin's wife admitted on cross-examination that the conversation did not include any direct mention of workers compensation, she also testified that she "knew, I mean that he knew that is what we were talking about. That is what we had talked about before." She also testified that she believed they were talking about the thing "that was coming up the next day, the pre-hearing conference."

Martin was placed on disability at a time which was in close proximity to the notification from his attorney that he was seeking a lump sum settlement. This constitutes some evidence to support the jury's verdict.

SWEPCO further argues that the evidence is insufficient to show that SWEPCO discriminated against him and that Martin's action in seeking a lump sum settlement brought about the alleged discrimination. In reviewing such a challenge, we consider all of the evidence, including evidence contrary to the jury's verdict. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). SWEPCO took the position that the change in status of Martin from full salary to long-term disability was because Martin was at all times totally disabled. In addition to the evidence already mentioned in the opinion, there was evidence presented by SWEPCO, elicited from both Martin's supervisors and his wife, that Martin no longer had the stamina to work extended periods of time during a day, that he tired easily, that his strength was minimal, and that he was not accomplishing much in the rehabilitation program. Brenda Martin testified that she observed no rehabilitation program at all, although her husband went to work on a daily basis for several months. (He worked approximately nine to three daily, instead of the normal eight to five schedule.) SWEPCO representatives testified that Martin was released because he could no longer work as a lineman, was wholly disabled, and did not have the drive or desire necessary to complete a rehabilitation program successfully. Martin testified that he did have the desire to get

better and to work on a regular basis and that he believed he was improving.[1]

There was testimony that the rehabilitation program was a long-range program, and Heard testified that he would not say that Martin was disabled to the extent that he would be completely out of the work force for the rest of his life. Heard testified that he was fully aware of the surgeries and Martin's physical condition and that he was willing to extend him the time necessary for such rehabilitation so that Martin could find some kind of meaningful work. Heard testified that due to Martin's injuries he thought that it would be very unlikely that Martin could be rehabilitated. He further testified that Martin did not take initiative to find work that he could do and that Martin did only what was assigned to him.

There was testimony from the Vice-President of Corporate Services, William Googe, Jr., who was one of Martin's supervisors, that he was not aware that Martin was going to have a number of surgeries, that Martin missed a lot of work because he was having physical therapy, and that in general his medical treatment was more extensive than had been anticipated. Googe also testified that he believed that if Martin filed a suit against third parties, such action would take a lot of time away from his rehabilitation program and would be counterproductive to Martin's rehabilitation because if Martin were doing well in rehabilitation, he would not be able to prove damages arising from extensive injuries and loss of income. SWEPCO representatives denied suggesting to Brenda Martin that SWEPCO's move to place her husband on long-term disability had any connection with Martin's pursuit of his workers' compensation claim or a lump sum settlement.

■■ When a jury is confronted with conflicting testimony, it may choose to believe one witness and to disbelieve others or may resolve inconsistencies in the testi-mony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). As the trier of fact, the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Dalton v. George B. Hatley Co.*, 634 S.W.2d 374, 377 (Tex.App.–Austin 1982, no writ). The evidence previously detailed, especially when examined in conjunction with the timing of his change in status by SWEPCO on the day before the hearing with the Industrial Accident Board and less than a month after he hired an attorney, is sufficient to support the jury finding that the company did discriminate against him in violation of Article 8307c. This point of error is overruled.

SWEPCO next contends that there is no evidence or insufficient evidence to support the amount awarded by the jury as damages. We shall examine the evidence using the standards that we have previously stated for such a review. The jury awarded $402,000 in lost wages and employment benefits "that will in reasonable probability be incurred in the future." The jury declined to award any damages for past lost wages, mental anguish in the past, mental anguish in the future, or exemplary damages.

■■ Even though Martin was an employee-at-will and had no right to be employed for any definite period of time, the jury can consider loss of wages as an element of damages. *See Santex, Inc. v. Cunningham*, 618 S.W.2d 557 (Tex.Civ. App.–Waco 1981, no writ). The correct measure for future damages for discharge of an employee for initiating a workers' compensation action is the sum of money that the employee would earn in the future had he not been terminated, less the sum of money which he will actually earn in the future.

■■ There was evidence that Martin's life expectancy was seventy-four years and that he was thirty-eight years of age at the time of injury.[2] Thus, the jury could con-

---

1. Martin testified: "I explained to them, I said, I am not a lazy person, I want to work, I want to do my time, I want to do what I can." He also testified that his leg had improved.

2. SWEPCO argues on rehearing that the jury could not properly have considered anything beyond age sixty-five. The jury charge was not so limited, and no instruction to this effect was

clude the number of potential working years Martin would have if he were rehabilitated so that he could hold a job. Googe testified that his long-term plan or goal was to train Martin and put him into an engineering technician's position. He testified that an entry level technician, after schooling and experience, makes from $30,000 to $31,000 per year. Googe testified that at the beginning he felt that rehabilitation as an engineering technician was a realistic potential for Martin with a lot of time and training and that it was not unusual for rehabilitation to take a long time. He testified that one of the reasons that he planned to work Martin into an engineering technician job was that the lineman work that he (Martin) had done would have been a helpful background for that job. Martin testified that he was continuing to get better and he believed that he could be rehabilitated. This is some evidence that will support the verdict.

█ In addition to the foregoing evidence, we now will consider the remainder of the evidence in order to determine the sufficiency of the evidence. The testimony established potential salaries by SWEPCO. The evidence showed that the company had over 2,000 employees working in various capacities. A plaintiff is not required to prove the exact amount of future lost wages, but only facts from which the jury can determine the proper amount. *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943).

The jury had sufficient evidence to calculate Martin's future earnings with SWEPCO had Martin been rehabilitated. The remaining question for the jury was whether Martin could have been rehabilitated so that he could perform these job requirements.

SWEPCO relies strongly on the following testimony by Heard for the proposition that Martin would never be able to do work as an engineering technician:

Q Then you don't think that he was capable of being trained into being an engineering technician?

A An engineering technician has to go into the field, take notes, climb through barbed-wire fences, brush and everything else. There was no way Mr. Martin could undergo any type training of that nature. Besides that he wasn't there. He was on and off so much there was no way we could train him in something like that.

The jury was not required to accept this opinion that Martin could not be rehabilitated for this job or that this was the basis for taking Martin out of rehabilitation. There was no medical prognosis in evidence, and most of the testimony about Martin's physical condition was made by Martin himself. The jury had evidence before it of his life expectancy, the nature of his injuries, the opinions of the management personnel of SWEPCO as to his recovery, and his own opinion as to his improved physical condition. The jury also had an opportunity to view his progress at the time of trial, which was four years after the accident. From the evidence concerning his health and physical condition, the jury could properly reach a conclusion that Martin could have been rehabilitated. There is sufficient evidence of Martin's potential earnings if he had been rehabilitated, upon which the jury could base its findings of loss of future earnings. We hold there was sufficient evidence for the jury to reach its verdict on the amount of damages for future loss of wages.

By stipulation, we have been asked to take judicial notice of the final judgment in favor of Martin against Texas General Indemnity Company in which it was judicially determined that Martin had a permanent total loss of use of his right hand at or above the wrist and permanent total loss of the use of his right leg at or above the ankle and that these injuries were a producing cause of permanent total incapacity. The stipulated exhibits further show that this judgment was affirmed by the Twelfth Court of Appeals in Tyler.

requested. Therefore, any error has been waived. Even had error been preserved, SWEP-

CO has not provided any authority supporting this position.

The general rule established by case law is that a court cannot judicially notice the records of another court. *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167 (1943). This rule of law prohibits an appellate court from going to the record of another case for the purpose of ascertaining a fact not shown in the record of the case before it. *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760 (1942). Although the language in Rule 201 of the Rules of Civil Evidence authorizing judicial notice is broad, there has been no case interpreting it to the contrary of these general rules. The motion before us, however, was submitted in the form of a stipulation. Therefore, we withdraw our notification that we would take judicial notice of the proceeding, and we shall consider it rather as a stipulation before the court.

Regardless of what we call this information about the workers' compensation case, we are still bound by Rule 52(a) of the Rules of Appellate Procedure. This rule requires that a party must present all matters to the trial court in order to preserve them for appellate review. The failure to raise this matter in the trial court waives any possible consideration by the appellate court.

SWEPCO has presented no reason why this matter was not raised at the trial court level. The judgment from the County Court at Law of Panola County was dated April 25, 1990. The present case went to trial in September 1991. The case was on appeal until May 21, 1992, but that did not preclude its possible use for purposes of collateral estoppel. In the case of *Scurlock Oil Company v. Smithwick*, 724 S.W.2d 1 (Tex.1986), the Texas Supreme Court said that a judgment is final for purposes of issue and claim preclusion despite the taking of an appeal (except where the appeal is trial de novo). This case overruled *Texas Trunk R. Co. v. Jackson*, 85 Tex. 605, 22 S.W. 1030 (1893). The record does not reflect that SWEPCO asked the trial court to consider this prior judgment for any purpose or that SWEPCO asked the trial court for any relief on the basis of this judgment.

Even if SWEPCO, by timely request, had properly preserved this matter before the trial court, the finding of total disability as that term is defined under the Workers' Compensation Act and as that term was defined for the jury in the workers' compensation case does not preclude the possibility of rehabilitation. The definition of "total incapacity" given to the jury in the workers' compensation case stated that it "does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual task of the worker, not merely the usual task of any particular trade or occupation, to such an extent that he cannot get and keep employment requiring the performance of the usual task of a worker." *See Texas Employers Ins. Ass'n v. Hawkins*, 369 S.W.2d 305 (Tex.1963). This would not, as a matter of law, preclude the possibility of rehabilitation as SWEPCO contends.

SWEPCO next contends that the trial court erred by refusing to allow it to question the jury panel during voir dire about SWEPCO's contention as to its motive for placing Martin on long-term disability. Prior to the voir dire of the jury, the trial court ruled on a motion in limine which included a request to exclude any mention "that Plaintiff had been involved in any lawsuit or claim, which lawsuit or claim was unrelated to the subject of the present action." SWEPCO's counsel made the following request to the court concerning this section of the motion in limine:

And also, Your Honor, we, as in connection with paragraph 18, as we understand, the fact that the plaintiff has filed a lawsuit against a third party, to-wit: the manufacturer of the bucket truck that the plaintiff was operating at the time of the accident, that lawsuit being filed in the United States District Court in Tyler, and arising from the same personal injuries that are involved in the workers' compensation claim in this lawsuit.

First of all, we want to tell the jury about that because the fact that the plaintiff *filed that lawsuit* was one of the reasons why he was placed on long

term disability in this case and taken out of the rehabilitation program of Southwestern Electric Power Company because he was pursuing that third party action. Southwestern Electric Power Company felt it would not be productive to keep him on the job if he was making that claim for a larger personal injury recovery, if that was one of the factors involved in its decision to place him on long term disability.

First of all, we think that is not unrelated to this case, but the Court has indicated he felt otherwise. We do want to go into that before the jury on voir dire and ask them can they give that factor as being part of Southwestern Electric Power Company's decision their fair consideration and determination in the evaluation of all the evidence.

(Emphasis added.)

Martin takes the position that his filing a lawsuit against a third party could not have been the reason for his removal from rehabilitation because the suit had not been filed at the time SWEPCO took this action. We have not found any place in the record, nor has counsel pointed out any, that gives the specific date of the filing of the suit in Tyler. Testimony did come in concerning this suit, and Googe testified in answer to question by counsel for SWEPCO as follows:

Q Did those two letters that Mr. Ammerman had written convince you that his primary interest was the institution of a lawsuit against Holan?

A Yes, sir.

Q Or someone else?

A Yes, sir.

. . . .

Q Did you feel, Mr. Googe, from your experience that someone *who was about to institute a suit* for damages because of injuries such as Mr. Martin had that their proof would be to prove something that was just in conflict with what you were trying to do under the rehabilitation program?

A That's correct, they would be exactly the opposite.

(Emphasis added.)

This evidence suggests that, at the time SWEPCO contended that this was a part of the basis for taking Martin off rehabilitation, the suit had not been filed. In the signed order granting specific sections of the motion in limine, the trial court granted the motion in limine as to "previous lawsuits or claims."

 Texas courts permit a broad range of inquiries on voir dire. The question on review is whether the trial court abused its discretion by refusing to allow questions to the jury panel about their reaction on this particular issue. *Babcock v. Northwest Memorial Hosp.*, 767 S.W.2d 705, 709 (Tex.1989). A court abuses its discretion when its denial of the right to ask a proper question prevents the determination of when grounds exist to challenge for cause or denies intelligent use of peremptory challenges. *Babcock v. Northwest Memorial Hosp.*, 767 S.W.2d 705; *Dickson v. Burlington Northern Railroad*, 730 S.W.2d 82, 85 (Tex.App.–Fort Worth 1987, writ ref'd n.r.e.). If such an abuse of discretion exists, the result is to deny the party the right to trial by a fair and impartial jury, a right guaranteed by the Texas Constitution and by statute. Tex. Const. art. I, § 15; Tex.Gov't Code Ann. § 62.105 (Vernon Supp.1992).

 Counsel for SWEPCO had a right to voir dire the jury about its contention that Martin was removed from the rehabilitation program because there was the possibility that he was going to file lawsuits against third parties. However, SWEPCO did not ask to question the jury about the possibility of lawsuits, but rather about a specific lawsuit that had been filed after SWEPCO's action. SWEPCO should have been allowed to ask if jurors were prejudiced against this reason for changing Martin's status, but in fairness to the trial court, this reason as presented by SWEPCO's witnesses was not "previous lawsuits or claims" but was the consideration of filing such a suit. The trial court could properly conclude that a lawsuit filed after

the occurrence in question and the outcome of that suit would have no bearing on the case at bar. The diligent trial judge informed counsel at the time that he had studied the case carefully, and this Court assumes that he made a distinction between the lawsuit that was filed after the fact and the discussions of the possibility of filing a lawsuit. When couched in different terms showing the possible motive by SWEPCO brought about by the discussion of the possible filing of the lawsuit, the trial judge allowed the mention of this in the opening statement to the jury as well as admitting evidence on this point. We find that the trial court did not abuse its discretion in not allowing counsel to voir dire the jury on a matter not relevant to the proceeding. This point of error is overruled.

The judgment of the trial court is affirmed.