

NUMBER 13-10-00241-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

JESUS R. SALINAS,                                                    **Appellant,**

**v.**

DAVID PANKRATZ AND UNION
CARBIDE CORPORATION,                                          **Appellees.**

---

On appeal from the 24th Judicial District Court
of Calhoun County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Benavides
### Memorandum Opinion by Justice Benavides

The trial court granted appellees David Pankratz's and Union Carbide Corporation's (Union Carbide) joint motion for summary judgment in a work-related negligence action brought against them by appellant Jesus R. Salinas. The trial court also sustained Pankratz's and Union Carbide's special exceptions to Salinas's fourth

amended petition and ordered dismissal of Salinas's constitutional claims. Salinas appeals the trial court's order and final judgment. We affirm.

## I. BACKGROUND

On June 4, 2007, Salinas suffered burns to various parts of his body when a steam pipe exploded behind him as he stood on the premises of Union Carbide's plant in Seadrift, Texas. Salinas was employed directly by Gulf States, Incorporated (GSI) and worked at the Union Carbide plant as a subcontractor. It is undisputed that this accident took place within the course and scope of Salinas's employment.

At all relevant times, GSI contracted with Union Carbide to provide labor and supervision at the Seadrift facility for a variety of services, including logistics, pipefitting, carpentry, and electrical work. The GSI-Union Carbide agreement for services also required Union Carbide to procure, maintain, and pay workers' compensation insurance—in GSI's name—to any subcontractors employed by GSI, like Salinas. The contract specified that the workers' compensation coverage would be provided by Union Carbide's parent company Dow Chemical's (Dow) owner-operated insurance program. Salinas reported the injury and received benefits under the Dow insurance coverage following the accident.

Salinas later filed suit against Dow[1] and Pankratz, a management employee of Dow and Union Carbide, alleging various claims of negligence. Pankratz and Union Carbide denied the allegations and invoked the exclusive remedy defense under the Texas Labor Code on the grounds that Union Carbide provided Salinas with workers' compensation insurance coverage following the accident. *See* TEX. LAB. CODE ANN. §

---

[1] Salinas subsequently non-suited his claims against Dow and named Union Carbide Corporation as a defendant in his first amended petition.

2

408.001(a) (West 2006). Salinas amended his petition to add claims of constitutional violations for being uninformed about which entity, if any, provided workers' compensation insurance coverage, sought declaratory relief, and attempted to move forward to trial on these claims. Union Carbide and Pankratz filed a traditional motion for summary judgment based on the exclusive remedy defense and also filed special exceptions and asked the court to dismiss Salinas's constitutional claims. The trial court granted the motion for summary judgment and sustained the special exceptions. In its order and final judgment, the trial court ordered a take-nothing judgment against Salinas and dismissed his constitutional claims.

Salinas filed a motion for new trial, which was denied. This appeal ensued.

## II. STANDARD OF REVIEW

"We review a trial court's grant of summary judgment de novo." *Mid-Century Ins. Co. of Texas v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). "To succeed in a motion for summary judgment . . . a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *see* TEX R. CIV. P. 166A(C). In our review, we consider the evidence "in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor," but "[u]nless the respondent produces summary judgment evidence raising a genuine issue of material fact, the court must grant the motion." *Urena*, 162 S.W.3d at 550. "A defendant is entitled to summary judgment if it conclusively negates an essential element of the plaintiff's case or conclusively establishes all necessary elements of an affirmative defense." *Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 616–17 (Tex. App.—Dallas 2006, no pet.).

The exclusive remedy statute of the Texas Workers' Compensation Act is an affirmative defense and places the duty on the employer to plead and prove such facts. *See id.* We must affirm the trial court if any theories advanced have merit. *Urena*, 162 S.W.3d at 550.

"Review of a trial court's dismissal of a cause based on the grant of special exceptions requires examination of two distinct rulings: 1) the decision to sustain the special exceptions; and 2) the decision to dismiss the cause of action." *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App.—Corpus Christi 2002, pet. denied). When ruling on special exceptions, the trial court has broad discretion and we review the trial court's order for abuse of discretion. *Id.* "The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable." *Id.* If the trial court properly sustained special exceptions, we then review whether dismissal was appropriate. *Id.*

### III. DISCUSSION

#### A. The *Entergy* Doctrine

Salinas argues that the trial court erred in granting Pankratz and Union Carbide's summary judgment because the Texas Supreme Court's *Entergy* opinion is inapplicable in this case because a genuine issue of material fact exists as to which entity was Salinas's employer. We disagree.

In *Entergy Gulf States, Inc. v. Summers*, the Texas Supreme Court decided that under the Texas Workers' Compensation Act (the Act), a premises owner who serves as a general contractor qualifies for immunity for a work-related injury claim through the exclusive remedy defense when it provides workers' compensation insurance coverage

4

to lower-tier subcontractor employees.  282 S.W.3d 443, 444–45 (Tex. 2009).  The "exclusive remedy defense" gives employers immunity from common-law tort suits when workers' compensation coverage has been provided to the injured employee.  *See* TEX. LAB. CODE ANN. § 408.001 (West 2006).

Salinas asserts that GSI—and not Union Carbide—was his "payroll employer," making the exclusive remedy defense and *Entergy* case inapplicable.  Union Carbide, however, argues that it was Salinas's *statutory* employer under the Act because it was classified as a general contractor in this scenario.  *See id.* § 406.123(e) (West 2006).  While the record provides evidence that GSI paid Salinas's salary, our review focuses on Union Carbide's argument that it was Salinas's statutory employer for purposes of workers' compensation laws, in order to determine whether *Entergy* applies.

A general contractor is defined as:

> [A] person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors. The term includes a "principal contractor," "original contractor," "prime contractor," or other analogous term.

*Id.* § 406.121(1) (West 2006).  Here, Union Carbide undertook the obligation to find services and labor and contracted with GSI, a subcontractor, in 2005 to perform various tasks at the Seadrift facility.  This 2005 contract was attached to Pankratz and Union Carbide's motion for summary judgment.  Accordingly, we conclude that Union Carbide, as contractor on the Seadrift plant, was a general contractor under the labor code's definition.  *See id.*

Next, we examine whether Union Carbide, as a general contractor, was Salinas's statutory employer.  Under the Act, a subcontractor's employees become a general contractor's employees solely for purposes of Texas workers' compensation laws if the

5

general contractor agrees in writing to provide workers' compensation insurance coverage to the subcontractor and the subcontractor's employees. *See id.* § 406.123(a), (e) (West 2006). The contract between GSI and Union Carbide for services and labor at the Seadrift plant contained a clause that obligated Union Carbide to provide workers' compensation coverage for GSI's employees—like Salinas—working in the course and scope of employment at the plant. Therefore, we conclude that this written agreement triggered the provisions of section 406.123 and made Union Carbide Salinas's statutory employer under the Act. *See id.* Further, it entitled Union Carbide to protection under the exclusive remedy defense. *See id.* §§ 406.123, 408.001; *Entergy*, 282 S.W.3d at 437–40. Thus, we hold that Union Carbide was entitled to use the exclusive remedy defense, the *Entergy* doctrine properly applies in this case, and the summary judgment was properly granted on this basis.

### B. Section 451 Discrimination Claim

In the alternative, Salinas argues that even if the *Entergy* doctrine applies, it nonetheless does not shield Union Carbide and Pankratz from his claims of discrimination under the Act. *See* TEX. LAB. CODE ANN. § 451.001 (West 2006). Salinas asserts that he was discriminated against under the labor code because he lacked requisite notice of the agreement between GSI and Union Carbide to provide him workers' compensation insurance coverage. We disagree that Union Carbide's failure to give notice to Salinas about appropriate workers' compensation coverage amounts to an act of section 451 discrimination.

Under section 451, an employer may not discharge, or in any manner discriminate, against an employee because the employee, among other things, filed a

workers' compensation claim in good faith or hired a lawyer to represent him in a claim. *See id.* An employee's discharge for engaging in workers' compensation activities covered under section 451 is "only one manner of discriminating against such an employee." *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 977–78 (5th Cir. 1993) (applying Texas law); *see Battin v. Samaniego*, 23 S.W.3d 183, 189 (Tex. App.—El Paso 2000, pet. denied) (holding that the legislature did not limit prohibition under section 451 to discharge only); *Castro v. U.S. Natural Res., Inc.*, 880 S.W.2d 62, 65 (Tex. App.—San Antonio 1994, writ denied) (concluding that placing an employee on indefinite leave without pay was a valid claim of discrimination under the Act); *Sw. Elec. Power Co. v. Martin*, 844 S.W.2d 229, 232 (Tex. App.—Texarkana 1992, writ denied) (upholding a jury verdict finding of discrimination where an employer reduced employee's pay and status).

But failure to give notice of coverage is not a discriminatory act. Instead, an employer's duty to provide notice of appropriate coverage to employees is addressed separately in the Act, *see* TEX. LAB. CODE ANN. 406.005(a)–(b), and an employer's failure to give the required notice under the statute constitutes an administrative violation. *See id.* § 406.005(e) (West 2006). While the record shows that Salinas did not receive notice of the available workers' compensation insurance coverage as required by the Act, we nonetheless conclude that this lack of notice does not amount to a discriminatory action by Union Carbide/Dow because the Act provides a separate provision and administrative remedy for Union Carbide/Dow's failure to provide notice. *See id.* §§ 451.001, 406.005. Accordingly, we overrule this issue.

## C. Constitutional Claims

Salinas also challenges the trial court's decision to sustain Pankratz's and Union Carbide's special exception and order of dismissal of his constitutional claims. He argues that his lack of notice of the Dow workers' compensation insurance coverage deprived him of the ability to forego and forfeit the benefits to preserve a third-party action against Union Carbide, in violation of his rights under the United States Constitution[2]. We disagree.

Specifically, Salinas asserts that Union Carbide's utilization of the exclusive remedy defense amounted to an unjust taking of his potential cause of action, in violation of the Fifth Amendment, and was also an excessive and unjust fine in violation of the Eighth Amendment. In order to pursue a Fifth Amendment takings violation, a federal government actor must be involved. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996); *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995). Here, no federal actor is involved, and therefore, Salinas suffered no cognizable Fifth Amendment deprivation. Likewise, Salinas's Eighth Amendment argument fails because the United States Supreme Court has interpreted the Eighth Amendment to "apply primarily, and perhaps exclusively, to criminal prosecutions and punishments" and not to civil actions such as the case before us. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262–63 (1989). Consequently, we hold that the trial court did not abuse its discretion in sustaining Pankratz's and Union Carbide's special exceptions and appropriately dismissed

---

[2] In his brief, Salinas argues that his Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated. We will limit our analysis, however, to the claimed Fifth and Eighth Amendment constitutional violations made to the trial court. *See* TEX. R. APP. P. 33.1.

8

Salinas's claims of constitutional violations because these allegations are not viable causes of action under these facts.

## IV. Conclusion

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
12th day of January, 2012.